Michael WEISS d/b/a Weiss &
Company, Inc., Appellant–
Defendant,

Cincinnati Insurance Company,
Appellant/Intervenor–
Defendant,

v.

Warren HARPER & Maureen Harper,
Appellees–Plaintiffs.

No. 49A02–0212–CV–1010.

Court of Appeals of Indiana.

Dec. 4, 2003.

Publication Ordered Feb. 11, 2004.

Jeffrey O. Meunier, Richard M. Giesel, Gaston Cavanaugh & Giesel, Indianapolis, IN, Attorneys for Appellants.

Liberty L. Roberts, Kenneth Collier–Magar, Collier–Magar & Roberts, P.C., Indianapolis, IN, Attorneys for Appellees.

## OPINION

MAY, Judge.

In 1991, Warren and Maureen Harper entered into a home improvement contract

with Weiss & Company, Inc. ("Weiss").[1] Upon completion of the project, the Harpers experienced water leaks and damage to the interior of their home. The Harpers filed a complaint against Weiss in Marion Circuit Court alleging in part they had suffered damages due to Weiss' poor workmanship and home improvement fraud. After a bench trial the trial court issued findings of fact and conclusions of law, in which it awarded to the Harpers compensatory damages in the amount of $157,651.04. Weiss filed a motion to correct error, which was denied.

Weiss raises five issues on appeal, which we consolidate and restate as:

1. Whether the trial court's findings are supported by the evidence and sufficiently specific to support the judgment;

2. Whether the trial court properly included in its award of costs items other than filing fees and statutory witness fees; and

3. Whether the award of attorneys fees to the Harpers was an abuse of discretion.

We affirm.[2]

## FACTS AND PROCEDURAL HISTORY

In 1991, the Harpers contracted with Weiss to construct a two-story addition to the Harpers' home. Weiss began construction in the summer of 1991 and substantially completed the work in February 1992. Shortly thereafter, water began to leak into the home in numerous areas as a result of a poorly constructed roof. The leaks continued for several years. The Harpers suffered damage to the interior of their home including wet and moldy drywall, peeling paint, water stains to the ceiling and walls, and an electrical fire in the breaker box. The bathtub and shower in the master bath were also improperly installed, causing additional water damage to the nearby walls of the house.

Weiss made attempts over several years to repair the damage to the Harpers' home, at times charging for those services and on other occasions making repairs free of charge. Despite the repairs, water continued to leak into the home resulting in additional damage; therefore, Weiss eventually agreed to replace the roof. During the roof replacement in the fall of 1998, more water damage occurred to the home during a storm because the roofers had not provided adequate coverage for the home. Despite the roof replacement, there were more water leaks.

On September 30, 1999, the Harpers filed a complaint against Weiss alleging 1) the Harpers had suffered damages as a result of Weiss' poor workmanship resulting in breach of contract; 2) Weiss had misrepresented the quality of the workmanship and materials used in constructing the additions, and thereby committed home improvement fraud; 3) as a result of the defects in the home, the Harpers' insurance provider refused to renew their homeowners policy; and 4) the poor workmanship and damage had resulted in loss of value to the home in excess of $200,000. A three-day bench trial commenced on December 4, 2001.[3]

Several witnesses in the fields of structural engineering and home building and remodeling testified regarding the quality of the addition Weiss constructed. All ex-

1. When the Harpers entered into the contract, the company was known as Weiss & Curise, Inc., but after Curise left the company, it became Weiss & Company, Inc.

2. The Harpers' request for oral argument is denied.

3. On November 13, 2001, Cincinnati Insurance Company intervened in the lawsuit.

perts agreed that both the original roof and the 1998 replacement roof on the Harpers' home were of poor quality. Even Weiss admitted the roof was poorly constructed.

Dave Adams, a sales representative and manager for Maxson Remodeling and Construction, testified regarding the repairs that should be made to correct the poor quality of the construction of the addition and the damages that resulted to the Harpers' home. In its report, Maxson Remodeling recommended the following repairs with an estimated total cost of $125,000 to $132,000:

1. Replace the insulation in the north and south attics, shim rafters where needed, add support members to ridge, and re-nail rafters to ridge;

2. Replace gutters with 6-inch gutters and 3-inch by 4-inch downspouts;

3. Replace trim, flashing, siding, drip edges, and guttering around the dormers, and prime and paint all dormers;

4. In the crawl space, install foundation vents, vapor barrier, foam board insulation around the perimeter, dig sump pit, install existing pit, and remove and replace one defective floor joist;

5. Replace exterior siding;

6. On the north end of the house, remove and replace roof over doors' off family room, including the wood columns, replace all exterior trim around window, caulk and flash around window, install flashing on all windows on the north and south ends, install new siding around windows;

7. Throughout the house, repair or replace drywall, prime and paint drywall, repair ceilings, and paint as needed; and

8. Replace carpet in the master bedroom.[4]

(Ex. Vol., Plaintiff's Ex. 25; Tr. at 179–258.)

Weiss presented the testimony of William Fox, a building code inspector with experience in home building and remodeling. Fox disagreed there was a need for many of the repairs Maxson Remodeling recommended, proposed different methods to repair certain defects, and opined that Maxson's budget estimate for the recommended repairs was too high.

The trial court issued its findings of fact and conclusions of law on October 4, 2002. It determined the materials and workmanship employed in the construction of the addition to the Harpers' home were of poor quality and Weiss was negligent in "performing all subsequent attempts to repair the damages caused" to the home.[5] (Appellants App. at 25.) The trial court awarded to the Harpers $125,000, which represented the "reasonable cost to repair the remaining defects" in the home, (id. at 23–24), and also awarded damages suffered by the Harpers in their attempts to assess and repair the damage to their home. The total compensatory damage award was $157,651.04. The trial court also determined that, pursuant to the home improvement contract, the Harpers as the prevailing party were entitled to costs and attorney fees. Weiss filed a motion to correct error, which was denied.

## STANDARD OF REVIEW

The Harpers requested special findings of fact and conclusions of law pursuant to Ind. Trial Rule 52(A). Our

---

4. This list is a summary of the repairs Maxson Remodeling recommended. Maxson's report itemized the repairs by stating the room or area of the house where the defects were located.

5. Weiss does not challenge that determination in this appeal.

standard of review is therefore two-tiered: we determine whether the evidence supports the trial court's findings, and whether the findings support the judgment. *Indianapolis Ind. Aamco Dealers Adver. Pool v. Anderson,* 746 N.E.2d 383, 386 (Ind.Ct.App.2001). We will not disturb the trial court's findings or judgment unless they are clearly erroneous. *Id.* Findings of fact are clearly erroneous when the record lacks any reasonable inference from the evidence to support them. *Culley v. McFadden Lake Corp.,* 674 N.E.2d 208, 211 (Ind.Ct.App.1996). A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. *Carroll v. J.J.B. Hilliard, W.L. Lyons, Inc.,* 738 N.E.2d 1069, 1075 (Ind.Ct.App.2000), *trans. denied* 761 N.E.2d 411 (Ind.2001). We will neither reweigh evidence nor judge the credibility of witnesses, but will consider only the evidence favorable to the judgment and all reasonable inferences to be drawn therefrom. *Anderson,* 746 N.E.2d at 386; *Gunderson v. Rondinelli,* 677 N.E.2d 601, 603 (Ind.Ct.App.1997).

## DISCUSSION AND DECISION

### 1. *Adequacy of Findings of Fact*

"Special findings are those which contain all facts necessary for recovery by a party in whose favor conclusions of law are found." *Bowman v. Bowman,* 686 N.E.2d 921, 925 (Ind.Ct.App.1997). The findings are adequate if they are sufficient to support a valid legal basis for the trial court's decision. *Id.* The purpose of special findings of fact is to provide reviewing courts with the theory on which the judge decided the case, so they should contain a statement of the ultimate facts from which the trial court determined the legal rights of the parties. *Id.* "On appeal, we construe the trial court's findings together liberally in support of the judgment; however, we may not add anything to the special findings of fact by way of presumption, inference, or intendment." *Baltimore & Ohio R.R. Co. v. Taylor,* 589 N.E.2d 267, 271 (Ind.Ct.App.1992), *trans. denied* 600 N.E.2d 543 (Ind.1992) (citation omitted). Where, as here, the issue on review relates to the award of damages, the damage award should not be reversed if it is within the scope of the evidence before the trial court. *Smith v. Washington,* 734 N.E.2d 548, 550 (Ind.2000), *reh'g denied.*

In its finding of fact number 87, the trial court determined "[i]n addition to the amount in Finding 88,[6] [the Harpers] have sustained additional damages in the amount of $125,000, which represents the reasonable cost to repair the remaining defects in [the Harpers'] home caused by [Weiss'] breach of contract." (Appellant's App. at 23–24) (footnote added).

*Sufficiency of Findings*

Weiss contends the trial court failed to issue findings sufficient to support its award of $125,000 to the Harpers.[7] Weiss notes that in finding number 86, the trial court set out a specific amount of damages for each repair the Harpers had previously made. "However, an equivalent finding was not made to support the award of

---

6. Finding number 88 states "Plaintiffs have sustained compensatory damages in the amount of $157,651.04." (Appellant's App. at 24.) It therefore appears the trial court meant to refer in finding number 87 to damages in addition to the amount in finding number 86, and not finding number 88.

7. Weiss also argues the $125,000 award was excessive, but premises that allegation of error only on the lack of evidentiary support for finding number 87. We therefore do not address the "excessive" nature of the verdict separately from the question whether the findings were sufficient to support the award.

$125,000 in damages under Finding nos. 87 and 88." (Appellant's Br. at 6.)

In most of its first 85 findings, the trial court described in great detail Weiss' inadequate workmanship and use of poor quality materials. In finding number 86, it determined the damages due the Harpers for the repairs they had already made. Finding number 87 addressed damages representing the "reasonable cost to repair the *remaining* defects" (Appellant's App. at 23–24) (emphasis supplied) in the Harpers' home caused by Weiss' breach. We decline to hold the trial court was obliged to restate in finding number 87 all the defects that had not yet been repaired and were therefore not itemized in finding number 86.

■ Furthermore, the finding that repair of the remaining defects would cost $125,000 was within the scope of the evidence. The trial court had before it the report by Maxson Remodeling and Construction referred to above, which listed in detail the repairs that remained necessary and estimated the cost of those repairs to be in the range of $125,000 to $132,000. It heard testimony to the same effect. We acknowledge the "sharp conflict in the evidence in the record as to whether there are defects, the extent of the defects, and the cost to repair them," (Appellant's Br. at 7), but we must decline Weiss' invitation to reweigh that evidence. The damage award to the Harpers was well within the scope of the evidence before the trial court. The findings of fact therefore are sufficient to support the award.

### Specificity of Findings

Weiss argues finding number 87 lacks the specificity [8] required to enable the parties and reviewing court to understand the trial court's reasoning.[9] Specifically,

8. Weiss premises this allegation of error on a statement from a workers compensation case, *Outlaw v. Erbrich Products Co., Inc.*, 758 N.E.2d 65 (Ind.Ct.App.2001). There we stated that "findings must be specific enough to provide the reader, whether it be the claimant, the employer, or this court, with an understanding of the Board's reasons, based on the evidence, for its finding of ultimate fact." *Id.* at 68.

Weiss acknowledges *Outlaw* was a workers compensation case but asserts, without explanation or citation to authority, that "the court's analysis of the specificity required for findings of fact applies equally to finds [sic] of fact made by a trial court." (Appellants' Br. at 11.) We decline to so hold.

The *Outlaw* statement on which Weiss relies in this civil action for damages was based on *Perez v. U.S. Steel Corp.*, 426 N.E.2d 29, 30 (Ind.1981). There our supreme court determined a finding of the workers compensation board was inadequate to support its conclusion that Perez was totally disabled: "It does not reveal the factual basis for the Board's ultimate determination of Perez's claim, which is the quintessential purpose of the requirement that *administrative agencies* enter specific findings of fact as part of their orders." (Emphasis supplied.) Our supreme court noted "as the General Assembly undoubtedly recognized in establishing the fact-finding requirement, specific findings of fact are essential to an effective system of *administrative* law." *Id.* (emphasis supplied). The reasons for the fact-finding requirement "have to do with facilitating judicial review, avoiding judicial usurpation of *administrative* functions, assuring more careful *administrative* consideration, helping parties plan their cases for rehearings and judicial review, and keeping *agencies* within their jurisdiction." *Id.* (emphasis supplied) (quoting Kenneth Davis, 2 *Administrative Law Treatise* § 16.05 (1958)). The *Perez* court relied also on statutory requirements for "specific" findings in the version of the Administrative Procedure Act in effect at that time.

The legal standard on which Weiss relies in this civil lawsuit thus appears applicable only to administrative fact-finding. We choose instead to apply the more useful standard of whether the damage award was within the scope of the evidence before the trial court. Under that standard, the trial court provided findings adequate to support the judgment.

9. Weiss also argues finding number 87 is actually a conclusion of law, which cannot be accepted as a finding of fact. However, in

Weiss argues that although there was conflicting evidence with regard to the necessary repairs and their cost,

> the trial court made no findings as to what comprised the other "remaining defects" and what is the "reasonable cost to repair" [ ] necessary to correct each individual item. The trial court merely stated a total amount for all remaining defects. Identification by the trial court of what constitutes the other "remaining defects" and what is the "reasonable cost to repair" to correct each is vital to permit this Court to give a meaningful review of the findings and judgment.

(*Id.* at 9.)

 As explained above, a review of the findings as a whole l eaves no doubt as to which were the "remaining" defects referred to in finding no. 87. "A special finding of fact, as opposed to a general finding, contains all facts necessary for recovery by a party in whose favor conclusions of law are found and should contain a statement of the ultimate facts from which the trial court determines legal rights of the parties to the action." *Willett v. Clark,* 542 N.E.2d 1354, 1357 (Ind.Ct.App. 1989). In an action for money damages the facts "necessary for recovery" are facts that indicate there was damage and

that support the amount of the award.[10] The trial court explained in great detail in its 88 findings of fact the problems that gave rise to the damages it ultimately awarded. Its findings were sufficiently specific.

### 2. *Award of Costs*

The trial court awarded the Harpers costs in the amount of $7,150.91. It included as costs such items as expert witness fees, travel expenses, deposition expenses, and photocopies. Weiss asserts the award was error because the term "costs" in Ind.Code § 34–52–1–1 and T.R. 54(D) "is strictly interpreted to include only filing fees and statutory witness fees." (Appellant's Br. at 15.) Even assuming for purposes of argument Weiss' interpretation of the term "costs" is correct, *see, e.g., Van Winkle v. Nash,* 761 N.E.2d 856 (Ind.Ct.App.2002), we find no error as the "costs" were awarded pursuant to the contract between the Harpers and Weiss and not the code provision or trial rule.

 The parties' contract, which appears to have been drafted by Weiss, provides that the "costs of litigation" are an element of damages that may be recovered by the prevailing party. (Ex. 1 at 13.) The contract does not define "costs of litigation," but the parties must have intended

---

*Hughes v. City of Gary,* 741 N.E.2d 1168 (Ind. 2001), our supreme court noted that "where a trial court has made special findings pursuant to a party's request under Trial Rule 52(A), the reviewing court may affirm the judgment on any legal theory supported by the findings. Any debate over the classification of each trial court finding as one of fact versus law does not, therefore, affect our analysis." *Id.* at 1172 n. 6. We acknowledge the Harpers' position that finding number 87 is not a legal conclusion, but a factual determination as to the cost to repair the defects in their home.

10. Weiss also asserts, without explanation or citation to authority, that "[t]his additional specificity should include identification of . . .

what 'repairs' are necessary to correct those defects." (Appellant's Br. at 13.) We decline to impose on the trial court an obligation to so micromanage the remediation of the defects in the Harper home. As the Harpers correctly note, this is an action for damages for Weiss' breach, and not an action for specific performance. The trial court was not obliged in this action for damages to explain how to repair each problem, just as a trial court in a medical malpractice case would not be obliged to advise a physician or physical therapist how he or she might treat a plaintiff's medical problems resulting from the malpractice.

that the "costs of litigation" would include more than statutory "costs" as the contractual provision explicitly includes attorneys fees, which are not included in the category of "filing fees and statutory witness fees." We cannot say the trial court erred in awarding such items as expert witness fees, travel expenses, deposition expenses, and photocopies as "costs of litigation" pursuant to the parties' contract.

### 3. *Excessiveness of Attorneys Fees*

The trial court awarded the Harpers attorneys fees in the amount of $55,000. Weiss argues the fees were excessive.[11]

In reviewing a trial court's award of attorneys fees, we apply an abuse of discretion standard. *Mason v. Mason*, 775 N.E.2d 706, 711 (Ind.Ct.App.2002), *trans. denied* 792 N.E.2d 34 (Ind.2003). A trial court has wide discretion in awarding attorneys fees, and we will reverse such an award only if it is clearly against the logic and effect of the facts and circumstances before the court. *Id.* The trial court may look at the responsibility of the parties in incurring the attorneys fees. *Id.* The trial judge has personal expertise he or she may use when determining reasonable attorneys fees. *Id.*

The factors to be considered in determining the reasonableness of a fee include:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

Ind. Professional Conduct Rule 1.5(a).

The Harpers filed an affidavit indicating the case spanned over four years and involved four expert witnesses, a number of lay witnesses, extensive discovery and three full days of testimony. The affidavit indicates the Harpers' counsel spent 462 hours working on the case and sought $150 per hour for their services. We acknowledge Weiss' characterization of this case as "a simple contractual claim," the pursuit of which required "no special skill or extraordinary knowledge." (Appellant's Br. at 16.) Still, in light of the time and effort spent in this litigation we cannot say the trial court abused its discretion in awarding $55,000 in attorneys fees.

### CONCLUSION

The trial court's finding number 87 was supported by the evidence and was within the scope of the evidence. The trial court did not err in awarding to the Harpers costs of litigation pursuant to the contract and did not abuse its discretion in its

---

11. Weiss also argues the award was improper because the Harpers failed to raise in the pleadings its request for attorneys fees and failed to present evidence at trial regarding a contractual claim for attorneys fees. The Harpers explicitly requested in their complaint "reasonable attorney's fees." (Appellant's App. at 60.) The contract, which explicitly provided for recovery of attorneys fees by the prevailing party, was admitted into evidence. We therefore decline to address that allegation of error.

award of attorneys fees. We accordingly affirm.

Affirmed.

KIRSCH, J., concurs.

MATHIAS, J., dissents with separate opinion.

MATHIAS, Judge, dissenting.

I respectfully dissent.

The majority acknowledges that "[t]he purpose of special findings of fact is to provide reviewing courts with the theory upon which the judge decided the case, so they should contain a statement of the ultimate facts from which the trial court determines the legal rights of the parties." *Bowman v. Bowman*, 686 N.E.2d 921, 925 (Ind.Ct.App.1997) (citing *Willett v. Clark*, 542 N.E.2d 1354, 1357 (Ind.Ct.App.1989)). Further, "[o]n appeal, we construe the trial court's findings together liberally in support of the judgment; however, we may not add anything to the special findings of fact by way of presumption, inference, or intendment." *Baltimore & Ohio R.R. Co. v. Taylor*, 589 N.E.2d 267, 271 (Ind.Ct. App.1992), *trans. denied* (citation omitted).

In finding number 87, the trial court awarded $125,000 to the Harpers, "which represents the reasonable cost to repair the remaining defects" in their home. In response to Weiss's argument that finding number 87 is not sufficiently specific to support the damage award, the majority concludes:

> As explained above, a review of the findings as a whole leaves no doubt as to which were the "remaining" defects referred to in finding no. 87.... In an action for money damages the facts "necessary for recovery" are facts that indicate there was damage and that support the amount of the award. The trial court explained in great detail in its 88 findings of fact the problems that gave

rise to the damages it ultimately awarded. Its findings were sufficiently specific.

Op. at 207. I disagree.

At trial, the contested issues were 1) what defects still remained in the Harpers' home, which required repair; 2) the method by which those defects were to be repaired; and 3) the cost to repair the remaining defects. The Harpers' witness, Dave Adams of Maxon Construction, and Weiss's witness, William Fox, gave conflicting testimony concerning those issues, particularly regarding which, among the alternative methods, was required to repair the siding and drywall in the house. For example, Adams testified that the exterior siding needed to be replaced, but Fox stated that the siding could be repaired at a significantly lower cost by either scraping and repainting it or by placing shims under the siding to allow moisture to evaporate. Tr. pp. 194, 439–41, 465–66. Despite lengthy testimony on this issue, the trial court never addressed it in its findings. The trial court simply found that the siding was not backprimed, and as a result, it absorbed water, which "caused the paint on the exterior of the home to blister with water pockets, and caused the paint to peel." Appellant's App. p. 22.

Additionally, several recommended repairs listed in the Maxon Remodeling report discussed at trial were not specifically addressed by the trial court in its findings. For example, Dave Adams testified that the insulation in the north and south attics was damaged and needed to be replaced, but Weiss's expert disagreed. Tr. pp. 187–88, 438. The trial court made no finding with regard to whether the insulation was damaged or whether it should be replaced. Adams also determined that repairs were needed to the ceilings in vari-

ous rooms in the Harpers' home. *See* Ex. Vol., Plaintiff's Ex. 25; Tr. pp. 179–258 (testimony of Dave Adams). Once again, the trial court failed to make any findings concerning whether the ceilings required repair.

Given the trial court's $125,000 judgment, although the trial court never referenced the Maxon Remodeling report in its findings, I must presume that the trial court relied heavily on the report in issuing that damage award. The trial court was clearly entitled to choose whom to believe among the experts. However, as noted above, when our court reviews special findings of fact and conclusions of law, we may not add anything to those findings "by way of presumption, inference, or intendment." Therefore, under these circumstances, I reluctantly conclude that the trial court did not issue sufficiently specific findings to support its $125,000 judgment and would remand this case for a new trial limited to the issue of damages.[12]

### ORDER

The Appellees, by counsel, have filed a Motion to Publish Memorandum Decision. They state that the Memorandum Decision clarifies the law as it relates to the degree of specificity required in findings of fact and conclusions of law entered by the trial court pursuant to Trial Rule 52, and the Appellees request that the Court publish its Memorandum Decision handed down on December 4, 2003.

Having reviewed the matter, the Court FINDS AND ORDERS AS FOLLOWS:
1. The Appellee's Motion to Publish Memorandum Decision is GRANTED, and this Court's opinion handed down on De-

cember 4, 2003, marked Memorandum Decision, Not for Publication, is now ORDERED PUBLISHED.

All Panel Judges concur.

---

12. Under most circumstances, remanding this case to the trial court to make specific findings of fact concerning the defects to be repaired would be an appropriate resolution. *See Willett,* 542 N.E.2d at 1358–59. Howev-

er, Judge Lawrence, who presided over the bench trial, has since retired from the Marion Circuit Court, and now serves as a magistrate in the United States District Court for the Southern District of Indiana.