David MOUNTS, White Swan Cleaners, Inc., David W. Lamont, and Terri A. Lamont, Appellants–Plaintiffs,

v.

EVANSVILLE REDEVELOPMENT COMMISSION, Appellee–Defendant.

No. 82A01–0410–CV–436.

Court of Appeals of Indiana.

July 26, 2005.

Leslie C. Shively, Shively & Associates, Evansville, for Appellants David Mounts and White Swan Cleaners, Inc.

David W. Lamont, Evansville, for Appellants David W. Lamont and Terri A. Lamont.

Dennis H. Otten, Robert D. Swhier, Sommer Barnard Attorneys, PC, Indianapolis, Keith E. Rounder, Bowers Harrison, LLP, Evansville, for Appellee.

## OPINION

KIRSCH, Chief Judge.

David Mounts, White Swan Cleaners, Inc., David W. Lamont, and Terri A. Lamont (collectively, the "property owners") challenge a decision of the trial court entering judgment in favor of the Evansville Redevelopment Commission (the "ERC"). The property owners raise the following consolidated and restated issues for our review:

I.   Whether the trial court, as part of its review under IC 36–7–14–18, erred in allowing the ERC to present additional evidence beyond that which was presented at the ERC's public hearing.

II.  Whether the trial court erred in determining that the ERC was not required to obtain consent of affected landowners before adopting Resolution 04–ERC–30 (the "Resolution").

III. Whether the trial court erred in determining that the evidence presented was sufficient to support the ERC's adoption of the Resolution.

IV.  Whether the trial court erred in finding that the adoption of the Resolution, which placed certain properties on the ERC's acquisition list, did not constitute a compensible taking.

V.   Whether the trial court erred in finding that the Stipulation of Dismissal with prejudice reached between the property owners and the ERC in 2002 did not bar the ERC from placing the property owners' properties on its acquisition list in 2004.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On January 20, 1984, the ERC adopted a declaratory resolution (the "1984 Resolution") declaring the Downtown Redevelopment Area (the "downtown area") to be a "blighted area," as used by the Redevelopment of Blighted Areas Act of 1981.[1] The 1984 Resolution also approved the Redevelopment Plan for the Downtown Redevelopment Area (the "1984 Plan"), which included numerous objectives to be achieved through the redevelopment and renewal of downtown Evansville (the "City").

On February 5, 2002, the ERC adopted the City's Downtown Master Plan of October 2001 (the "2001 Plan"), which amended the 1984 Plan by adding four new objectives, along with various concepts and proposals for redeveloping the downtown area. On February 19, 2002, the ERC adopted Resolution 02–ERC–05, which added the property owner's properties to its acquisition list. The property owners appealed the action of the ERC. Subsequently, the ERC removed the properties from the acquisition list by Resolution 02–ERC–51 on November 25, 2002, pursuant to a Stipulation of Dismissal with prejudice

---

1. *See* IC 36–7–14.

reached between the property owners and the ERC.

Thereafter, on August 17, 2004, the ERC voted to approve the Resolution to add additional property, including that of the property owners, to its acquisition list. Prior to the vote, various remonstrators had testified in person or by counsel, including the property owners. The property owners appealed the ERC's decision to the trial court, which held a hearing on the matter on September 21, 2004. The trial court issued its Findings of Fact and Conclusions of Law on September 28, 2004, in favor of the ERC.[2] The property owners appeal.

## DISCUSSION AND DECISION

◼ The property owners first allege that the trial court erred in allowing the ERC to present evidence at trial that had not been introduced at its public hearing on the Resolution. IC 36–7–14–18 governs the appeals process by which remonstrators may challenge decisions of redevelopment commissions. It provides:

(a) A person who filed a written remonstrance with the redevelopment commission under section 17 of this chapter and is aggrieved by the final action taken may, within ten (10) days after that final action, file in the office of the clerk of the circuit or superior court a copy of the order of the commission and his remonstrance against that order, together with his bond conditioned to pay the costs of his appeal if the appeal is determined against him. The only ground of remonstrance that the court may hear is whether the proposed project will be of public utility and benefit. The burden of proof is on the remonstrator.

(b) An appeal under this section shall be promptly heard by the court without a jury. All remonstrances upon which an appeal has been taken shall be consolidated and heard and determined within thirty (30) days after the time of the filing of the appeal. The court shall hear evidence on the remonstrances, and may confirm the final action of the commission or sustain the remonstrances. The judgment of the court is final and conclusive, unless an appeal is taken as in other civil actions.

IC 36–7–14–18.

The property owners maintain that IC 36–7–14–18 allows the trial court to hear additional evidence from the remonstrators only. They argue that trial court thus erred in allowing the ERC to admit evidence other than what was intrinsically part of the administrative record of the hearing on the Resolution. In support of their position, the property owners rely on our supreme court's opinion in *Hawley v. South Bend Dept. of Redevelopment*, 270 Ind. 109, 383 N.E.2d 333, 340 (1978).

In *Hawley*, remonstrators objected to the South Bend Redevelopment Commission's ("SBDC") use of maps and plats of its proposed urban renewal plan at trial because those maps and plats were not formally introduced into the record at the SBDC's hearing. Specifically, our supreme court found:

For purposes of the remonstrances in the trial court, the maps and plats clearly were admissible. They were essential to the development of the project. Merely because they were not formally introduced at the administrative hearing does not mean they should be excluded from consideration in an appeal to a court of law, particularly when they are

2. We would like to commend the trial court for its detailed findings, which greatly aided us in our review.

of singular importance to the controversy. These plats and maps were prepared for the administrative body for the purpose of carrying out this project. They were a part of the intrinsic record rather than extrinsic evidence that required introduction before consideration by the Commission. We hold the trial court did not err in admitting the maps and plats.

*Hawley,* 383 N.E.2d at 340.

The property owners argue that this language prohibits the trial court from hearing any evidence from the ERC other than that which is "part of the intrinsic record" of the administrative hearing on the Resolution. *Id.* Here, the specific evidence that the property owners challenge is the testimony of Debra Spaulding, a staff member of the City's Department of Metropolitan Development, and the testimony of Bradford R. Hurt of Urban Initiatives. Spaulding appeared briefly before the ERC to introduce the Resolution, but Hurt did not appear or present evidence at the hearing on the Resolution. Spaulding's testimony at trial described the property owners' properties and the ERC's reasons for wanting to place the properties on their acquisition list. At trial, Hurt testified that he believed that the ERC's desire to acquire the properties was reasonable based on his past experiences with redevelopment projects.

Certainly, the testimony of an administration staff member providing background information concerning the motivation of the ERC would be helpful for the trial court's consideration. So too would the testimony of a witness, experienced in redevelopment projects, be helpful to the trial court in assessing "whether the pro-

posed project will be of public utility and benefit," as is required by the appeals statute.[3] IC 36–7–14–18(a).

In addition, the trial court allowed the property owners to present testimony from witnesses not appearing at the ERC hearing on the Resolution. Nancy Jane Diekmann testified regarding White Swan Cleaners, Inc.'s negotiations with a potential buyer of their property.[4] Jack Rogers, a commercial realtor and developer, provided testimony relating to his opinion that property placed on an acquisition list becomes more difficult to sell. Jeffrey Bosse, an attorney and owner of a title company, discussed how his company would write a title insurance policy for a property listed on an acquisition list.

We do not believe that our supreme court in *Hawley* intended to allow new evidence from remonstrators, while limiting the evidence of the ERC to that presented at the hearing or only that considered "part of the intrinsic record." *Hawley,* 383 N.E.2d at 340. Just as the property owners were allowed to present additional evidence relating to the remonstrances, the ERC should also be allowed to present additional evidence relating to the remonstrances. We cannot say that the trial court erred in allowing this testimony, in light of the specific language of the statute requiring it to "hear evidence on the remonstrances." IC 36–7–14–18(b).

The property owners next make a series of arguments regarding the findings and conclusions of the trial court. When, as here, the trial court enters findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A), we utilize a two-

---

**3.** We note that the ERC was not limited in its review by this language. *Salk v. Weinraub,* 271 Ind. 115, 117, 390 N.E.2d 995, 997 (1979).

**4.** Although Diekmann did not attend the ERC hearing personally, she did send counsel to represent her interests.

tiered standard of review. *Weiss v. Harper*, 803 N.E.2d 201, 204–05 (Ind.Ct.App. 2003). First, we determine whether the evidence supports the trial court's findings, and then whether the findings support the judgment. *Id.* at 205. Special findings are adequate to support the judgment only if they disclose a valid basis for the legal result reached by the trial court. *Indiana Family & Soc. Servs. Admin. v. Amhealth (Evansville), Inc.,* 790 N.E.2d 162, 165 (Ind.Ct.App.2003).

We will not disturb the trial court's findings or judgment unless they are clearly erroneous. *Weiss,* 803 N.E.2d at 205. Findings of fact are clearly erroneous when the record lacks any reasonable inference from the evidence to support them. *Id.* A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. *Id.* We will neither reweigh evidence nor judge the credibility of witnesses, but will consider only the evidence favorable to the judgment and all reasonable inferences to be drawn therefrom. *Id.*

■ The property owners first maintain that the trial court erred in determining that the ERC was not required to make an additional finding of blight, provide cost estimates, or obtain consent of affected landowners before adopting the Resolution. However, because the ERC did not propose to enlarge the original boundaries of the 1984 Plan by more than 20%, there is no need for the ERC to make findings on blight or to provide cost estimates. IC 36–7–14–17.5; *see also Reel Pipe and Valve Co., Inc. v. The Consolidated City of Indianapolis—Marion County,* 633 N.E.2d 274, 279 (Ind.Ct.App.1994), *trans. denied.* Therefore, we will address only the contention that the ERC must obtain consent from property owners before amending the 1984 Resolution.

■ The Resolution was an amendment to the 1984 Resolution, which approved the City's downtown redevelopment plan. When the ERC amends one of its resolutions, it must find that "the amendment is reasonable and appropriate when considered in relation to the original resolution or plan and the purposes of this chapter" and that the proposed amendment "conforms to the comprehensive plan for the unit." IC 36–7–14–17.5(c). It appears that the ERC utilized this method for amending the 1984 Resolution on numerous occasions since it was set up by the legislature as the statutory procedure for amending redevelopment plans. *Plaintiffs' Exhibit 2 of the Judicial Review Hearing of September 21, 2004.* However, the property owners maintain that the ERC must use the amendment procedure set forth in the 1984 Plan, which requires the ERC to obtain consent from any developers of property within the downtown area that are directly affected by the proposed amendment before modifications to the 1984 Plan can be approved. We disagree.

■ The ERC adopted the 1984 Resolution approving the 1984 Plan pursuant to the Redevelopment of Blighted Areas Act of 1981, which did not provide for a public hearing and notice of that hearing to amend a resolution or plan adopted under the statute. Therefore, it made sense for the ERC to have included a provision within the 1984 Plan that detailed a procedure for amending it. However, the Redevelopment of Blighted Areas Act of 1981 was amended in 1989 to provide for notice, a public hearing, and other procedures for amending a resolution or plan. Since the ERC adopted a fairly detailed amendment to the 1984 Plan in 2001, as well as several amendments adding various properties to its acquisition list, under this statutory procedure for amendment, it seems unrea-

sonable to now require the ERC to obtain consent from the developers directly affected by the proposed amendment before being able to make any changes. Further, by requiring the ERC to obtain such consents, the language of the 1984 Plan would act as a major impediment to both the ERC's ability to clear, replan, and redevelop blighted areas under the Act and the municipality's powers of eminent domain. "The power of eminent domain is an attribute of sovereignty and inures in every independent state. It cannot be surrendered, and, if attempted to be contracted away, it may be resumed at will." *S. Indiana Gas and Elec. Co. v. City of Boonville*, 20 N.E.2d 648, 652, 215 Ind. 552, 559 (Ind.1939). The trial court's finding that the ERC did not need to obtain consent from property owners before amending its 1984 Resolution was supported by evidence and was not clearly erroneous.

■ The property owners next argue that the trial court erred in determining that there was sufficient evidence to support the ERC's adoption of the Resolution. Again, IC 36–7–14–17.5(c) requires that the ERC find that "the amendment is reasonable and appropriate when considered in relation to the original resolution or plan and the purposes of this chapter" and that the proposed amendment "conforms to the comprehensive plan for the unit."

In reviewing the action of the ERC, the trial court found that the ERC considered evidence demonstrating that "acquisition of the properties was necessary to further the downtown redevelopment strategy based on the [1984] Plan and the Act" and that "putting the properties on the acquisition list sets the stage for redevelopment, including eliminating blighted areas and creating the potential for new job opportunities and increased tax values." *Appellant's Appendix* at 181. The trial court

also found that the 1984 Plan included objectives such as "enhancement and revitalization of the Area," "provision of sites for housing in the Area," and "stimulation of land uses which strengthen and intensify existing sound land use relationships in the Area." *Id.* at 178. Further, the trial court found that the 2001 Resolution, which amended the 1984 Plan, also included additional objectives, such as "encouraging private investment and redevelopment within the Area," "enhancing retail and commercial business activity within the Area," and "encouraging compatibility with the concepts and recommendations of the 2001 Plan to further downtown revitalization." *Id.* The evidence supported the trial court's decision that the ERC's adoption of the Resolution.

■ Next, the property owners allege that the trial court erred in finding that the adoption of the Resolution, which placed certain properties on the ERC's acquisition list, did not constitute a compensible taking. We disagree. "[T]he process of declaring an area blighted and adding property to the acquisition list does not result in the taking of property. Rather, only after proceeding with these preliminary steps may the Commission begin the process of actually acquiring property by eminent domain." *Reel Pipe & Valve Co., Inc.*, 633 N.E.2d at 279. The trial court's decision that placing the property owners' properties on their acquisition list did not constitute a compensible taking was not clearly erroneous.

■ Finally, the property owners maintain that the trial court erred in finding that the ERC was not barred from placing the property owner's properties on its acquisition list as a result of the Stipulation of Dismissal with prejudice reached between the property owners and the ERC in 2002.

In February 2002, the ERC passed a resolution which placed the property of the property owners on its acquisition list. The property owners appealed that decision. The property owners and the ERC agreed to dismiss the property owners' claims with prejudice pursuant to Ind. Trial Rule 41(A)(1)(b). Shortly thereafter, the ERC passed another resolution removing the properties of the property owners from its acquisition list. We cannot see what preclusive effect this could have against the ERC's actions in 2004; instead, it seems more likely that the Stipulation would act to bar the property owners' claims, if any.

In Indiana, it is well settled that a dismissal with prejudice is a dismissal on the merits, and as such, it is conclusive of the rights of the parties and res judicata as to the questions that might have been litigated. *Lakeshore Bank and Trust Co. v. United Farm Bureau Mut. Ins. Co., Inc.*, 474 N.E.2d 1024, 1027 (Ind.Ct.App. 1985). However, the 2002 dismissal was effectuated before any claims were litigated. We do not believe that such a voluntary dismissal of claims, filed before any questions were litigated, would bar either party from bringing suit on a new ERC resolution passed two years later, even if it were pertaining to the same subject matter. In two years, changed circumstances are certain and prohibiting subsequent action by the ERC regarding the same properties would be unreasonable. Therefore, the trial court was not clearly erroneous in determining that the dismissal from 2002 had no bearing on the Resolution passed by the ERC in 2004.

Affirmed.

BAKER, J., and BARNES, J., concur.