## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 21 2016, 8:19 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

R. Scott Lewis
David A. Lewis
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE

Mark E. Miller
Bowers Harrison LLP
Evansville, Indiana

C. Gregory Fifer
Applegate Fifer Pulliam LLC
Jeffersonville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| City of Jeffersonville, Indiana, and City of Jeffersonville Sanitary Sewer Board, <br><br> *Appellants-Defendants,* <br><br> v. <br><br> Environmental Management Corporation, <br><br> *Appellee-Plaintiff* | September 21, 2016 <br><br> Court of Appeals Case No. 10A01-1511-PL-1967 <br><br> Appeal from the Clark Circuit Court <br><br> The Honorable Vicki L. Carmichael, Judge <br><br> Trial Court Cause No. 10C04-0808-PL-757 |

**Crone, Judge.**

# Case Summary

This is the third appeal brought by the City of Jeffersonville ("Jeffersonville") and the City of Jeffersonville Sanitary Sewer Board ("Sewer Board") (collectively "the City") from the trial court's award of attorney's fees in favor of Environmental Management Corporation ("EMC"). This Court has twice reversed the trial court's fee award and remanded for redetermination and recalculation of recoverable attorney's fees. *See City of Jeffersonville v. Envtl. Mgmt. Corp.*, 954 N.E.2d 1000 (Ind. Ct. App. 2011), and *City of Jeffersonville v. Envtl. Mgmt. Corp.*, No. 10A01-1210-PL-485, 2013 WL 2716135 (June 12, 2013), *trans. denied* ("*EMC I*" and "*EMC II*" respectively). The City again appeals arguing that the trial court abused its discretion yet a third time in determining and calculating the attorney's fees incurred and recoverable by EMC as a result of its contempt claim against the City. Finding no abuse of discretion, we affirm.

# Facts and Procedural History

The relevant facts and procedural history as recited in the most recent memorandum decision by another panel of this Court in *EMC II* follow:

> On May 1, 2004, Jeffersonville through the Sewer Board entered into a contract (the Contract) with EMC for the operation and maintenance of Jeffersonville's sewer system. EMC was obligated to operate and maintain the sewer system in accord with state, federal and other requirements. The Contract contained a notice and cure provision giving both parties the right to terminate "in the event of a material breach or

unsatisfactory performance of a material obligation" upon 90 days' prior notice. [*EMC I*, 954 N.E.2d at 1004.]

On April 15, 2008, the Sewer Board held a public meeting where Mayor Thomas Galligan of Jeffersonville (Mayor Galligan) discussed his concerns with EMC's performance. Although not recorded in the meeting minutes, the Sewer Board instructed its attorney to first send written notice to EMC regarding its deficient operation and maintenance of the sewer treatment system and then to send a notice terminating the Contract if "EMC had not corrected the issues within 90 days." *Id*. at 1005. On April 18, 2008, the attorney sent EMC a letter requesting detailed operational documentation, inspection or investigation results, and records "including lists of equipment and equipment maintenance, a history of work performed, and customer complaints." *Id*. However, the letter did not indicate that the City intended to terminate the Contract if the performance issues were not corrected within 90 days. EMC later informed Jeffersonville that the Sewer Board's April 18 letter "requested documentation that exceeded EMC's production obligations under the Contract." *Id*. In its August 7, 2008 letter, the City notified EMC that they were terminating the Contract because EMC had failed to provide records requested by the City's April 18 letter and had failed to correct the operational deficiencies previously identified at the April 15 meeting. EMC later responded that the City still had not provided EMC with written notice of a specific material breach or unsatisfactory performance as contractually required prior to termination.

On August 18, 2008, EMC filed its complaint for declaratory judgment, breach of contract, and specific performance, as well as a motion for preliminary injunction and expedited hearing. On August 22, 2008, the trial court approved the parties' agreed entry and order (Agreed Entry) vacating and resetting the preliminary injunction hearing. Under the Agreed Entry, the parties agreed to maintain the *status quo* until a ruling on EMC's

preliminary injunction motion, and that the City would neither interfere with EMC's access to the sewer facilities, nor hire EMC employees pending the ruling on the preliminary injunction. On September 12, 2008, the matter was referred to mediation. On September 23, 2008, the City filed its answer, a counterclaim against EMC, and its response to EMC's preliminary injunction request. The City's counterclaim included fraudulent inducement and damages resulting from EMC's acts or omissions. On October 17, 2008, in a separate cause of action, EMC filed a complaint against the City, alleging a violation of Indiana's Open Door Law. On October 23, 2008, EMC filed its motion to dismiss the City's counterclaim in the breach of contract action, which was later denied.

On December 1, 2008, Mayor Galligan, accompanied by two police officers, arrived at the sewer plant "and took over its operations, declaring that EMC could no longer have access to the [p]lant or the treatment system." *Id*. at 1007. That same day, EMC filed "a verified information for contempt, a motion to enjoin further violation of the Agreed Entry, and a motion for an emergency hearing thereon against the City." *Id*. On December 3, 2008, the City filed its verified response to EMC's contempt motion. In addition to denying that it violated the Agreed Entry, the City made a counter-motion for contempt against EMC, alleging that EMC had violated alternative dispute resolution rules by filing a notice of tort claim and a second Open Door Law complaint against the City subsequent to the Agreed Entry.

Thereafter, both parties moved for summary judgment, which the trial court denied on February 24, 2009. The trial court also consolidated EMC's four claims—two Open Door claims, breach of contract, and the City's contempt—as well as the City's counterclaim for trial. A lengthy bench trial ensued, stretching over three separate trial periods in June, July and December 2009. On April 12, 2010, the trial court entered judgment in favor of EMC on all four of its claims and the City's counterclaim,

awarded damages to EMC, and ordered the City to pay EMC's attorney fees and costs. In addition to post-judgment interest, the trial court awarded EMC its lost profits of $268,560.39 from operation of the sewer plant and attorney fees and costs in the amount of $315,554.04.

The City appealed raising six issues of alleged trial court error including EMC's breach of contract, Open Door Law, and contempt claims as well as the trial court's award of attorney fees and costs. *Id*. at 1003. We affirmed in part, reversed in part and remanded. *Id*. at 1016-17. Regarding the breach of contract issue, we found that the City's "April 18 letter did not provide EMC with written notice that the City intended to terminate the Contract," and did not "allege inadequate performance." *Id*. at 1008-[0]9. This court therefore concluded that "the trial court did not err in concluding that the City breached its contract with EMC." *Id*. at 1009. Regarding the Open Door Law Claims, we concluded that EMC waived its claims by failing to timely file them. *Id*. at 1011. Regarding the contempt action, we rejected the City's argument "that it did not violate the Agreed Entry because EMC violated it first." *Id*. at 1012. Because "the City has not disputed that it violated the Agreed Entry," we held that "the trial court did not abuse its discretion in finding the City in contempt of the Agreed Entry." *Id*.

We next reviewed the trial court's award of $315,554.04 in attorney fees and costs to EMC. The City argued that this award was an abuse of discretion because it was awarded "without regard to whether the [attorney] fees were incurred in relation to the Open Door Complaints, the contempt of the Agreed Entry, or the breach of contract Complaint." *Id*. We concluded that the trial court had abused its discretion and remanded "to the trial court with instructions that the trial court modify its award of [attorney] fees and costs to EMC to include only the amount of [attorney] fees EMC incurred as a result of its contempt

complaint and costs reflecting EMC's losses for filing fees and statutory witness fees." *Id*. at 1017.

On July 26, 2012, the trial court held a hearing on attorney fees. EMC introduced affidavits and time sheets from five of its attorneys at the law firms of Applegate Fifer Pulliam LLC [("AFP")] and Bowers Harrison LLP [("Bowers Harrison")]. Two of the attorneys' affidavits contained the following statements:

> 3. In order for EMC to prove that the City's actions on December 1, 2008 violated the Agreed Order, EMC had to prove at trial that the City had violated the terms of the Agreed Order, and that the City had no contractual authority to physically remove EMC without prior notice from the City's [wastewater] treatment and collection facilities.
>
> 4. Due to the City's defenses to EMC's claim that the City violated the Agreed Order, EMC had to prove at trial that the City had no contractual authority to physically remove EMC without prior notice from the City's wastewater treatment and collection facilities in order for EMC to prove that the City's action on the [sic] December 1, 2008 violated the Agreed Order.
>
> 5. Due to the City's defenses to EMC's claim that the City violated the Agreed Order, EMC had to prove at trial that the City had no contractual authority to take its actions on December 1, 2008, and that EMC had been damaged by the City's violation of the Agreed Order.

Affidavits from EMC's three other attorneys contained substantially similar allegations. As a result, each attorney

requested fees that admittedly pertained to both EMC's contempt and breach of contract claims.

On September 26, 2012, the trial court issued its Findings of Fact, Conclusions of Law, and Judgment awarding EMC's attorney fees. The trial court found that EMC filed "its Complaint for Declaratory Judgment, Breach of Contract, and Specific Performance and its Plaintiff's Motion for Preliminary Injunction and Expedited Hearing;" that the parties' Agreed Entry required maintenance of the *status quo;* and that EMC requested that the City be found in contempt of the Agreed Order. However, the trial court found that "[t]he City's actions made it necessary for EMC to prove that it had the right to operate the facilities, that the City lacked the authority to interfere with EMC's rights, and that EMC was damaged." The trial court also found that the Contract terminated on April 30, 2010 and "but for the City's violation of the Agreed Order, EMC's right to operate the facilities would have remained unimpaired through the contract termination date." The trial court further concluded that to prove the City's contempt, EMC had to not only prove the City's violation of the Agreed Order but because the City asserted its contractual authority as a defense to the contempt claim, EMC "had to prove that the City had no contractual authority to physically remove EMC without prior notice from the City's wastewater treatment and collection facilities." The trial court also concluded that "[s]olely due to the contemptuous acts of the Defendants, EMC was required to provide its lost profit damages at the trial of this case."

The trial court calculated attorney fees from December 1, 2008 to February 23, 2010 as "$170,754.54 to the firm of [Bowers Harrison], and [attorney] fees of $76,195.50 to the firm of [AFP] [ ... ], for a total of $246,950.04." The trial court then deducted fees in the amount of $19,644.91 for EMC's Open Door Law claims during the same period. It awarded EMC attorney fees of

$227,305.13, to which it added post-judgment interest of eight percent, resulting in a total award of $269,004.47.

*EMC II*, slip op. at *1-4 (some alterations added) (record citations omitted).

The City appealed, arguing that the trial court improperly awarded attorney's fees for legal services unrelated to EMC's contempt claim. A second panel of this Court again reversed the trial court's award of attorney's fees to EMC. Specifically, the Court held,

> [T]he trial court abused its discretion by not specifically apportioning the attorney fees so as to impose fees only for the contempt claim. Although the trial court excluded attorney fees incurred either as a result of the unsuccessful Open Door Law claims or after trial had concluded, it again awarded "blanket compensation" to include fees incurred in the breach of contract claim. We therefore reverse the trial court's award of attorney fees to EMC, and remand for a determination as to the amount of attorney fees incurred *solely* for the prosecution of the contempt claim.

*Id*. at *6 (citation omitted).

The trial court held remand hearings in April and July 2015. After considering extensive evidence and testimony, and conducting a "careful analysis of the time slips of Bowers Harrison's attorneys and the time slips of AFP's attorneys, as well as the trial transcript, the post-trial briefs and opinion, and the first appellate briefs and opinion," the trial court entered detailed findings of fact and conclusions thereon awarding EMC $191,472.74 in attorney's fees plus post-judgment interest of $82,128.69. Appellants' App. at 10-36. The City now

appeals for a third time. We will provide additional facts in our discussion as necessary.

## Discussion and Decision

The sole issue presented for our review is whether the trial court abused its discretion in determining and calculating the amount of attorney's fees recoverable by EMC as a result of its contempt claim against the City. We begin by reiterating our well-settled standard of review:

> We review an award of attorney's fees keeping in mind that a trial court is afforded broad discretion in awarding attorney's fees and expenses. In light of that standard, we will only reverse a trial court's decision when an abuse of discretion is apparent. A trial court has abused its discretion when its decision is clearly against the logic and effect of the facts and circumstances before it.

*EMC I*, 954 N.E.2d at 1012-13 (citations omitted). On appeal, we neither reweigh the evidence nor judge the credibility of witnesses. *In re Paternity of Pickett*, 44 N.E.3d 756, 771 (Ind. Ct. App. 2015). We presume the trial court properly exercised its discretion in making its award and we will reverse only when "there is no evidence to support the award." *Witt v. Jay Petroleum, Inc.*, 964 N.E.2d 198, 205 (Ind. 2012).

Additionally, at the City's request, the trial court entered findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52. Again, our standard of review is well settled.

> First, we determine whether the evidence supports the findings
> and second, whether the findings support the judgment. In
> deference to the trial court's proximity to the issues, we disturb
> the judgment only where there is no evidence supporting the
> findings or the findings fail to support the judgment. We do not
> reweigh the evidence, but consider only the evidence favorable to
> the trial court's judgment. Challengers must establish that the
> trial court's findings are clearly erroneous. Findings are clearly
> erroneous when a review of the record leaves us firmly convinced
> a mistake has been made.

*Estate of Kappel v. Kappel,* 979 N.E.2d 642, 651-52 (Ind. Ct. App. 2012) (citations and quotation marks omitted).

[7] We observe that once a party is found in contempt, the trial court has the inherent authority to compensate the aggrieved party for losses and damages resulting from another's contemptuous actions. *EMC I*, 954 N.E.2d at 1013. This compensation can include an award of attorney's fees. *Id.* However, an award of attorney's fees is "appropriately limited to those fees incurred because of the basis underlying the award." *Nance v. Miami Sand & Gravel, LLC*, 825 N.E.2d 826, 838 (Ind. Ct. App. 2005), *trans. denied*. The party requesting an assessment of attorney's fees bears the burden of proving an appropriate allocation of fees between issues for which attorney's fees may be assessed and those for which they may not. *Id.* "'While a perfect breakdown is neither realistic nor expected, a reasonable, good faith effort is anticipated.'" *Id.* (quoting *Shell Oil Co. v. Meyer,* 684 N.E.2d 504, 525 (Ind. Ct. App. 1997), *aff'd in relevant part,* 705 N.E.2d 962, 981 (Ind. 1998)). Moreover, "[t]he trial judge possesses personal expertise that he or she may use when determining

reasonable attorney's fees." *Weiss v. Harper*, 803 N.E.2d 201, 208 (Ind. Ct. App. 2003).

[8] In determining which attorney's fees were incurred as a result of the City's contempt and therefore recoverable by EMC, the trial court divided the time slips for EMC's attorneys into three groups: (1) time slips relating to EMC's claims for breach of contract, Open Door Law violations against the City, and the City's breach of contract claims and constructive fraud claims; (2) time slips relating solely to the complaint for contempt; and (3) time slips relating to a combination of contempt and other legal issues. Appellants' App. at 13. The parties agree with one another, and with the trial court, that no fees are recoverable from the first group of time slips and that all the fees are recoverable from the second group of time slips. Regarding the third group of time slips, the trial court determined that a percentage of those fees were incurred based on the City's contempt and thus were recoverable by EMC. It is the trial court's decision to award these fees that the City now challenges.

[9] In considering the third group of time slips, the trial court found in relevant part,

> 13. A percentage of the third group of Bowers Harrison and [AFP] time slips relating to a combination of contempt and other legal issues are included in the calculation of EMC's attorney's fees … because precisely extricating just the contempt from these time slips requires an apportionment of the fees. These percentages are based off of a careful analysis of the trial transcripts [and] post-trial briefs[] and represent the percentage of documents that directly relate solely to EMC's complaint for

contempt for each respective phase of the case. Recognizing the extent of the impracticality of requiring EMC and its attorneys to extricate and apportion fractions of each individual time slip as relating solely to the complaint for contempt (the time slips for which date back as long as seven years prior), this Court finds that the application of these percentages to the third group of time slips represents the most accurate and practical allocation of the attorney fees directly relating solely to the prosecution of EMC's complaint for contempt. The Court finds that the allocated percentages of the documents directly relating solely to the complaint for contempt for each phase of the case is representative of the percentage of time EMC's attorney's [sic] spent working directly relating solely to the contempt issues, and therefore the application of these percentages to the attorney's fees related to the time slips with combined legal issues for each respective phase accurately apportions EMC's attorney's fees related directly related solely to the prosecution of the complaint for contempt.

*Id*. at 14.

[10]     In determining the applicable percentages, the trial court analyzed the trial transcript and post-trial briefs, searching for eight "key terms" identified by EMC as terms solely related to its contempt claim.[1] Based upon its analysis, the trial court concluded that seventy-eight percent of the transcript pages directly related to EMC's contempt claim, and therefore seventy-eight percent of the fees incurred during the pretrial and trial period were recoverable. Similarly, the court concluded that thirty-two percent of the post-trial briefing

---

[1] Those key terms were: contempt, Agreed Order, Consent Decree, December 1st, Hydrogen Sulfide, Damages, Environmental Protection Agency, and EPA. Appellants' App. at 15.

pages directly related to EMC's contempt claim, and therefore thirty-two percent of the fees incurred during the post-trial period were recoverable. Based upon these calculations, the trial court awarded EMC $191,472.74 in attorney's fees.

[11] The City does not specifically challenge the trial court's findings in this regard, but argues that the trial court abused its discretion in awarding EMC any amount of fees from the third group of time slips and points to one sentence from *EMC II* which states, "We therefore reverse the trial court's award of attorney fees to EMC, and remand for a determination as to the amount of attorney fees incurred *solely* for the prosecution of the contempt claim." *EMC II*, slip op. at *6. The City focuses on the word "solely" in that sentence and complains that EMC proved that it incurred only $18,968 of attorney's fees "solely" for the contempt claim because the time slips for those fee entries were the only ones that were specifically delineated with the term "contempt." Appellants' Br. at 7. Thus, the City argues, the trial court abused its discretion in awarding EMC any attorney's fees other than those in the second group of time slips that were specifically delineated.

[12] However, a single sentence or single word should not be taken out of context and read in isolation to lead to as restrictive of a result as the City suggests. Indeed, the City wholly ignores the specific holding of *EMC I* in which the Court stated that, "We remand to the trial court with instructions that the trial court modify its award of attorney's fees to reflect only the amount EMC incurred *in relation to* its contempt Complaint." *EMC I*, 954 N.E.2d at 1013

(emphasis added). This holding is consistent with the discussion in the body of *EMC II*, which provided that an award of attorney's fees should be limited to fees incurred "as a result of" the contempt." *EMC II*, slip op. at *4. Contrary to the City's assertions, the holdings in the prior appeals in this matter did not deprive the trial court of its considerable discretion to award any and all attorney's fees incurred by EMC in relation to and as a result of the contempt claim. The trial court was specifically directed to calculate the amount of attorney's fees incurred by EMC as a result of the contempt claim but to refrain from awarding EMC "blanket compensation" to include fees incurred as a result of the breach of contract claim. *EMC I*, 954 N.E.2d at 1013; *EMC II*, slip op. at *6. The trial court followed that directive by carefully analyzing the voluminous record to determine an accurate apportionment of EMC's attorney's fees from this third group of time slips between its contempt claim and its other claims for which attorney's fees are not recoverable. The trial court's extensive and detailed findings and conclusions reflect its thorough and thoughtful examination of the record. We commend the trial court for undertaking this daunting task.

[13] The City maintains that the "key terms" methodology proffered by EMC and applied by the trial court in determining the apportionment of attorney's fees was arbitrary and unreasonable. However, recognizing the "impracticality" of extricating and apportioning fractions of each individual time slip as relating to the contempt, the trial court concluded in its considerable discretion that, under the specific circumstances presented in this complex litigation, application of

the key terms methodology to determine what percentages of the attorney's fees were directly related to the contempt represented "the most accurate and practical" way to apportion fees. Appellants' App. at 14. We will not second-guess this determination. The trial court sat through the evidence and the testimony and therefore possesses unique knowledge of the case and has personal expertise that places her in the best position to determine reasonable attorney's fees. *See Witt*, 964 N.E.2d at 203 (observing considerable trial court discretion in both determining whether to find a party in contempt and in apportioning amount of attorney's fees as sanction for contempt). Moreover, EMC was not required to submit an exact breakdown of its attorney's fees, and we think that its submission of detailed affidavits explaining the use of the key terms methodology constituted a reasonable, good-faith effort to aid the trial court in properly allocating its attorney's fees between issues for which attorney's fees may be assessed and those for which they may not. We cannot say that the trial judge's decision to apply this methodology in combination with her observing the trial was clearly against the logic and effect of the facts and circumstances before it.

[14] Based on the foregoing, we conclude that trial court did not abuse its discretion in determining and calculating the amount of attorney's fees recoverable by EMC. The judgment of the trial court is affirmed in all respects.

[15] Affirmed.

Kirsch, J., and May, J., concur.