**Sherry Lee Land BOWMAN, Appellant–Respondent,**

**v.**

**George William BOWMAN, Jr., Appellee–Petitioner.**

**No. 34A05–9706–CV–221.**

Court of Appeals of Indiana.

Nov. 10, 1997.

---

Lawrence T. Newman, Indianapolis, for Appellant–Respondent.

Rodney V. Shrock, Kokomo, for Appellee–Petitioner.

## OPINION

BARTEAU, Judge.

Sherry Land Bowman (Sherry) appeals a trial court order granting a petition to modify custody and support, and awarding custody of her two sons to their father, George William Bowman, Jr. (Bill). She raises three issues, which we consolidate and restate as:

1. Whether the trial judge properly admitted a Guardian ad Litem report into evidence 14 days after the conclusion of the custody hearing, when the report was filed with the court and served on both counsel ten days prior to the hearing, and the author of the report was available for examination at the hearing?

2. Whether the trial court's findings of fact and conclusions of law are supported by the evidence in the record?

We affirm.[1]

---

1. On September 25, 1997, Sherry petitioned for oral argument before this court. We deny that petition.

## FACTS

Sherry Bowman gave birth to twin sons on May 26, 1987, while she and Bill were married. The parties' marriage was dissolved on October 19, 1992, and custody of the two children was awarded to Sherry pursuant to the dissolution decree. On September 13, 1996, Bill filed a petition asking the court to transfer custody of the boys to him.

The court appointed a guardian ad litem and directed her to prepare a custody evaluation of the parties, and it set a hearing date of December 23, 1996. The guardian was directed to submit her report at least ten days before the hearing, and on December 13, 1996, the guardian filed her report with the court and served it on counsel for both parties. The guardian was present at the hearing but was not asked to testify. She made a statement to the court at end of the hearing, re-emphasizing her conclusions. Neither party objected to her statement.

On January 6, 1997, the court issued its order granting a change of custody of the boys to Bill. As part of that order, the trial court admitted the guardian ad litem's report into evidence for the first time. Both parties filed motions to correct error. Bill's motion alleged only an error in the court's schedule for Sherry's visitation. Sherry's motion asserted as error, among other things, the trial court's admission of the report after the hearing. The court issued a corrected order, revising some of its conclusions of law [2] but reaching the same result as to the modification of custody, on February 28, 1997.

## ADMISSION OF GUARDIAN AD LITEM REPORT

◼ Sherry argues her due process rights were violated by the trial court's reliance on a guardian ad litem's report which was not admitted into evidence until after the custody hearing. Both parties agreed to a hearing schedule which provided two hours for each party to present its case and cross-examine witnesses. But Sherry now argues that if the guardian ad litem's report had been offered into evidence at the hearing, she would have objected to the two hour time limit, because the generally unfavorable report would have put her "in the position of defending both against the case put on by William Bowman and the evidence and recommendations set forth in the GAL [guardian ad litem] report." Brief of Appellant at 21.

◼ Child custody proceedings implicate the fundamental relationship between parent and child, so procedural due process must be provided to protect the substantive rights of the parties. *Brown v. Brown,* 463 N.E.2d 310, 313 (Ind.Ct.App.1984). The Indiana legislature has provided a fairly detailed list of procedural requirements for courts to follow in custody and modification cases, Ind.Code § 31-1-11.5-20 to 24, including procedures for the acceptance of custody evaluation reports, Ind.Code § 31-1-11.5-22.

◼ Trial courts are empowered by the statute to order and consider such reports, and the reports may be admitted into evidence at custody hearings. *Id.* They cannot be excluded on the grounds they are hearsay or are otherwise incompetent. *Id.* Because such reports may contain information and suggestions prejudicial to the claim of one or both of the parties, the statute also requires that the parties or their counsel be given copies of the reports ten days before the proceeding so that they may be prepared to cross-examine the person who compiled the report, or challenge the sources of the information in the report. *Brown,* 463 N.E.2d at 313; Ind.Code 31-1-11.5-22(c).

In *Brown,* the final report was not submitted to the court until the day after the hearing. As the report preferred the mother over the father, and the court ruled against the father, we found the father's rights could well have been prejudiced by not having access to the report ten days before the hearing as required by statute. 463 N.E.2d at 314. Similarly, in *Jendreas v. Jendreas,* 664 N.E.2d 367, 370 (Ind.Ct.App.1996), *trans. denied,* we found a mother's due process rights were violated when the court accepted a psychologist's custody evaluation reports

---

2. We need not address the specific revisions to the court's original conclusions of law because they do not affect our analysis in this appeal of the court's corrected order.

which recommended the child live with his father, but then denied the mother's request for a hearing after the report was submitted. We noted that the trial court's action denied the mother the opportunity to examine the probity and veracity of the psychologist's recommendations, upon which the trial court expressly relied in making its custody decision. *Id.*

Sherry, by contrast, was not deprived of her opportunity to cross-examine the person who prepared the report, or of her opportunity to otherwise examine the probity and veracity of the recommendations in the report. The guardian ad litem provided Sherry's counsel with a copy of the report ten days before the hearing, as required by statute. At a meeting of the judge and counsel for both parties on the day of the hearing, both counsel indicated they had received the report. The judge notified counsel that the report would be considered as part of the evidence and that the guardian ad litem was in the courtroom and available for examination. During the hearing, both Sherry and her counsel referred to information in the report, and the guardian ad litem herself made a statement without objection by either party. At the end of evidence, the judge said "At this time the Court is prepared to conclude this hearing and will take this matter under advisement, consider all evidence heard, pleadings filed, *including the Guardian Ad Litem's report,* and I expect to have a decision within the next two to three weeks." R. at 512 (emphasis supplied).

None of the circumstances which demonstrated a deprivation of due process in *Brown* or *Jendreas* were present here, and Sherry was not otherwise prejudiced by the admission of the report into evidence after the hearing. Any error arising from the trial court's admission of the report into evidence subsequent to the hearing was thus harmless.

### SUFFICIENCY OF THE EVIDENCE

A child custody determination falls within the sound discretion of the trial court, and we will not disturb its determination on appeal unless there is a showing of abuse of discretion. *Matter of Guardianship of R.B.,*

619 N.E.2d 952, 955 (Ind.Ct.App.1993). We are reluctant to reverse a trial court's determination concerning child custody unless the determination is clearly erroneous and contrary to the logic and effect of the evidence. *Id.* We do not reweigh evidence nor reassess witness credibility, and we consider only the evidence which supports the trial court's decision. *Wallin v. Wallin,* 668 N.E.2d 259, 261 (Ind.Ct.App.1996).

Sherry requested that the trial court make special findings of fact and conclusions of law under Indiana Trial Rule 52(A). Special findings are those which contain all facts necessary for recovery by a party in whose favor conclusions of law are found. *Dahnke v. Dahnke,* 535 N.E.2d 172, 175 (Ind.Ct.App.1989). The findings are adequate if they are sufficient to support a valid legal basis for the result reached by the trial court. *Id.* The purpose of special findings of fact is to provide reviewing courts with the theory upon which the judge decided the case, so they should contain a statement of the ultimate facts from which the trial court determines the legal rights of the parties. *Willett v. Clark,* 542 N.E.2d 1354 (Ind.Ct.App.1989).

### The Findings of Fact

Sherry first argues that certain of the court's findings of fact were unsupported by the evidence in the record. Specifically, the court found that there was conflicting evidence regarding Sherry's degree of cooperation with Child Protection Services after a criminal charge of battery against her and a CHINS petition had been resolved informally. Those actions were taken after an incident in October 1994 where Sherry had spanked the boys with a hairbrush, leaving one of the boys with large bruises. Sherry testified she had completed parenting classes and counseling pursuant to the agreement. However, there was also testimony by the police officer who investigated the incident that Sherry refused to cooperate with Child Protection Services subsequent to the police investigation. We must decline Sherry's invitation to reweigh that evidence or to usurp the trial judge's authority to determine the credibility of the witnesses.

■ Sherry next challenges the trial court's factual finding that she has experienced financial difficulties continually since the dissolution and that her expenses regularly exceed her income. The trial court heard testimony that Sherry's 1996 income fell some four thousand dollars short of her expenses, and that she was forced to withdraw the boys from the school they were attending because she couldn't pay the tuition. There was evidence she had difficulty paying a number of medical bills in 1992 and 1994. The guardian ad litem report also expressed serious concerns about whether Sherry could meet her family's financial needs on an ongoing basis. Sherry was not able to state with any certainty at trial what her income actually was, and indicated she supports herself from "cash flow." R. at 381. There was ample evidence to support the trial court's characterization of Sherry's financial status, and we cannot reweigh that evidence.

### The Conclusions of Law

■ A trial court may not modify a child custody order unless the modification is in the best interests of the child, and there is a substantial change in one or more of the factors a court is to consider in determining custody initially. Ind.Code § 31–1–11.5–22(d). Those factors include:

(1) the age and sex of the child;

(2) the wishes of the child's parent or parents;

(3) the wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age;

(4) the interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interests;

(5) the child's adjustment to his home, school, and community;

(6) the mental and physical health of all individuals involved; and

(7) evidence of a pattern of domestic violence by either parent.

Ind.Code § 31–1–11.5–21(a). The noncustodial parent must show a change in the custodial home which is of a decisive, substantial, and continuing nature. *Simons v. Simons*, 566 N.E.2d 551, 554 (Ind.Ct.App.1991).

Sherry points to five matters set forth by the court as its basis for deciding there had been a significant change of circumstances sufficient to support a change in custody, and argues they do not satisfy sections (4) and (5) of the statutory standard set out above. Specifically, the five matters are:

1. The spanking incident described above which led to the charge of battery against Sherry and the filing of a CHINS petition;

2. The boys' relationship with Sherry and their stepsister;

3. Sherry's decision to home school the boys;

4. Sherry's subsequent marriage; and

5. Sherry's use of inappropriate caretakers for the boys.[3]

■ Sherry first contends the spanking incident in the Fall of 1994 does not support a change in custody because it was a "singular occurrence," she has not been accused of abuse and neglect before or since that incident, and she has since disciplined the children appropriately without incident.[4] Brief of Appellant at 30. However, as noted above, the trial court had evidence before it that Sherry did not cooperate in the investigation of that incident. There was also evidence that Sherry failed to complete the parenting classes she was ordered to take following the 1994 incident, and evidence that she still believes there was nothing wrong with spanking the boy hard enough to leave

---

3. In her fifth argument, Sherry also asserts the court erred when it concluded she had exhibited poor judgment in fiscal management. We have previously determined that the evidence supports the court's finding that Sherry has experienced financial difficulties since the dissolution of her marriage to Bill. The trial court did not abuse its discretion when it concluded from those facts that Sherry had demonstrated poor judgment in fiscal matters.

4. In support of her characterization of the incident, Sherry directs us only to that part of the record containing her own testimony at the custody hearing.

bruises. The trial court did not abuse its discretion when it used the incident to support its conclusion that there was a substantial change in the applicable statutory factors.

■ Sherry next asserts that the trial court erred when it expressed concern that the focus of the relationship between Sherry and the boys was what best meets Sherry's needs, rather than what best meets the boys' needs. The court based its characterization on Sherry's statements[5] that she and the boys are "best buddies," that she has sacrificed everything for them, and that their stepsister would miss the boys if their father had custody.

Sherry urges us to characterize these statements as showing her concern for the boys' needs, and not for her own needs. However, because the court's characterization of the evidence before it is not clearly erroneous or contrary to the logic and effect of the evidence, we cannot say the court abused its discretion if it relied on those statements as a ground for changing custody.

■ Sherry next asserts the trial court erred in determining that her home schooling arrangement was a ground for change of custody. The boys had attended a Christian academy until Fall of 1996, when Sherry was unable to continue paying the tuition. The court expressly declined to find Sherry's decision to home school the boys was, in itself, a ground for changing custody. However, it did find the home schooling had reduced the boys' opportunities to interact socially with others and to participate in sports, and it noted that the boys' educational progress was entirely dependent on Sherry's abilities as an instructor. The court noted that a number of social and athletic activities are available to home schooled children in the area. However, it found such opportunities had been limited for the boys, primarily by Sherry's choice. It also noted the boys didn't like the home schooling, in part because of their lack of interaction with past school friends.

The court's conclusion about the effect of these particular circumstances surrounding the boys' home schooling (as opposed to the fact of the home schooling itself) is not clearly erroneous or contrary to the logic and effect of the evidence which supports it, and we cannot say the court abused its discretion if it relied on those circumstances as a ground for awarding custody to Bill.

■ The trial court did not abuse its discretion in concluding that Sherry's relationship with and subsequent marriage to Carl Greeno, Jr. were grounds for modifying the custody order. The court had evidence before it that Sherry took Greeno in as a boarder in September 1993 to supplement her income. She married Greeno in May 1994, and the two separated in June 1994. Greeno also lived in Sherry's home with her and her children for a short time in late 1994. Sherry became pregnant by Greeno before the marriage and gave birth to their daughter after the marriage. Sherry and Greeno used marijuana together while Greeno was living in the home. Greeno was convicted of drug-related offenses after the separation and is now incarcerated. Sherry has not divorced Greeno because it violates her religious beliefs. The trial court did not abuse its discretion when it used Sherry's relationship with Greeno to support its conclusion that there was a substantial change in the applicable statutory factors.

■ Finally, Sherry challenges the court's conclusion that she had left the boys with inappropriate caretakers. Her only assertion of error is that the information upon which the conclusion is based came from the guardian ad litem report, which we have determined was properly admitted into evidence. We cannot reweigh that evidence or substitute our judgment regarding its credibility for that of the trier of fact.

### CONCLUSION

Sherry was not denied due process by the admission of a guardian ad litem report after

---

**5.** Sherry contends some of the statements at issue were not from her own testimony as the court's conclusions indicate, but instead came from other sources who testified about what

Sherry had said. However, all the statements were in evidence, and we will not usurp the trial court's role as sole judge of the credibility of the witnesses in order to reweigh the evidence.

her custody hearing; the trial court's findings were amply supported by the evidence in the record; and the trial court's conclusions of law were not clearly erroneous. Its order modifying custody is affirmed.

SHARPNACK, C.J., and ROBERTSON, J., concur.