Jason J. GREEN, Appellant–Petitioner,

v.

Laura S. GREEN, Appellee–Respondent.

No. 52A02–0712–CV–01126.

Court of Appeals of Indiana.

July 21, 2008.

Monty K. Woolsey, Cross, Woolsey & Glazier, P.C., Indianapolis, IN, Attorney for Appellant.

Rebecca R. Vent, McIntyre, Hilligoss, Vent & Welke, Kokomo, IN, Attorney for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

In the third time this child custody case has been before this Court, Jason J. Green ("Father") appeals the trial court's denial of his petition to modify custody of his son, B.G., who relocated to Iowa in 2005 with his mother, Laura S. Green ("Mother"). Although we conclude that the trial judge, who is the second judge to have reviewed this case, did not abuse his discretion in denying Father's petition to modify custody of B.G., who has now been living in Iowa with Mother for three years, we do conclude that the judge abused his discretion in decreasing Father's parenting time and ordering him to pay a portion of Moth-er's attorney fees. We therefore affirm in part, reverse in part, and remand.

### Facts and Procedural History

Father and Mother were divorced in the Miami Circuit Court on February 14, 2001. They have one son, B.G., born in January 1995. The parties agreed to joint legal custody of B.G. with Mother having physical custody and Father having parenting time upon reasonable notice and at all reasonable times and places. On May 4, 2005, Mother notified Father that she intended to move to Iowa. Father filed a petition to change custody and a request for an emergency hearing prohibiting Mother from relocating out-of-state with B.G. The court scheduled a hearing and, in the interim, prohibited Mother from removing B.G. from Indiana. Mother then filed a notice of intent to relocate to Iowa, indicating her move-date would be June 4, 2005. Mother also filed a motion to set aside the court's order prohibiting her from removing B.G. from Indiana. Following a hearing, the trial court granted Mother's motion to set aside and set the case for a final hearing on July 19, 2005.

On the following day, July 20, 2005, the court entered an order denying Father's petition to modify custody. The trial court entered one conclusion regarding the petition: "[Father's] Petition should be denied. While [Mother's] move to Iowa is a substantial change the Court cannot conclude that [B.G.'s] best interests require a modification of custody." Appellant's App. p. 30. Attached to this conclusion was the following footnote:

> The Court is aware of the close, loving and supportive relationship [Father] has with [B.G.]. However, in addition to [B.G.] experiencing new opportunities with other family members, schoolmates and friends, the Court anticipates that [Father] and his family will not miss an opportunity to visit with [B.G.] as well.

*Id.* at n. 1. The remainder of the trial court's order concerned visitation, child support, and other matters.

Father then appealed to this Court seeking custody of his son. On February 27, 2006, we held that the trial court abused its discretion in denying Father's petition for modification of custody because it failed to properly consider the factors listed in Indiana Code § 31–17–2–8, as required by Indiana Code § 31–17–2–21, which governs the modification of child custody. *Green v. Green*, 843 N.E.2d 23, 27–28 (Ind.Ct.App.2006) ("*Green I* "). We concluded, "We therefore reverse and remand to the trial court for a determination regarding whether the effect of [Mother's] relocation to Iowa is of such a nature as to require a modification in the custody of B.G." *Id.* at 29.

After receiving this Court's opinion, the trial court directed the parties "to submit proposed Findings of Fact and Conclusions of Law[.]" Appellant's App. p. 42. Mother filed a Motion for Submission of Additional and Supplemental Evidence, in which she stated "[t]hat considerable time, circumstances and facts have occurred since the initial hearing herein and the court's determination" and "[t]hat in order for the court to make a reasoned decision to the 'best interests' of the child, additional and supplemental evidence is beneficial and necessary." *Id.* at 43. Father objected in writing to Mother's motion, stating, in part:

> The Court of Appeals did not reverse and remand this matter to the Trial Court for a new hearing but instead reversed and remanded for the Trial Court to issue a new order considering all the evidence presented during the July 19, 2005 hearing in connection with the "best interest[s] of the child" standard as set forth in I.C. § 31–17–2–8.

*Id.* at 46. The trial court entered an order granting Mother's Motion for Submission of Additional and Supplemental Evidence and overruling Father's objection thereto, set a hearing in the matter, and vacated its previous entry requesting Findings of Fact and Conclusions of Law.

Father then filed a Motion for Change of Venue from the Judge ("Change of Judge Motion") pursuant to Indiana Rule of Trial Procedure 76(B). Mother filed an objection, and, after a hearing, the trial court entered an order denying Father's motion. The trial court stated, in part:

> This matter is presently on remand from the Indiana Court of Appeals pursuant to their opinion dated February 27, 2006. This Court, having heard the evidence should resolve the issues as directed by the Court of Appeals. The Court further finds that [Mother's] Motion for Submission of Additional and Supplemental Evidence, which was granted by Order dated March 7, 2006, involves issues ancillary to those heard on July 19, 2005.

[Father's] Motion for Change of Venue from the Judge should be denied. *Id.* at 51. Father asked the trial court to certify its order for interlocutory appeal, but the trial court refused.

The trial court held a final hearing in the matter on August 14, 2006, and the parties submitted proposed findings of fact and conclusions of law. On August 31, 2006, the trial court entered an order denying Father's petition to modify custody. The court stated, in part, "Having heard the additional evidence the Court finds no reason to deviate from its' [sic] prior order." *Id.* at 26.

Father again appealed to this Court, raising several issues. On April 5, 2007, we issued an opinion finding the following issue dispositive: whether the trial court erred in denying Father's motion for

change of venue from the judge. *Green v. Green,* 863 N.E.2d 473 (Ind.Ct.App.2007) ("*Green II*"). Specifically, we held that Father was entitled to a change of judge pursuant to the version of Trial Rule 76(C)(3) [1] in effect at the time of Father's motion because the trial court, in essence, granted a new trial upon remand. *Id.* at 476–77. We noted that, although it was not our intention for the trial court to conduct a new trial upon remand, that is precisely what the trial court did when it granted Mother's Motion for Submission of Additional and Supplemental Evidence and set a hearing in the matter. *Id.* at 477. As such, we concluded:

> We acknowledge that our resolution of this case will extend this nearly-two-year-long custody fight, but Trial Rule 76(C)(3) establishes [Father's] right to a change of judge. When the trial court granted a new trial, it should have granted [Father's] motion for change of judge. Because it did not, we remand this cause to the trial court for the selection of a new judge and a new trial on [Father's] petition to modify custody of B.G.

*Id.* at 478.

Thereafter, the Honorable William C. Menges was appointed special judge in this case. A status hearing was held on June 20, 2007, and the trial court noted that pursuant to this Court's opinion in *Green II,* the trial court's prior granting of Mother's Motion to Reopen the Evidence was vacated. The parties were given additional time to respond to Mother's Motion to Reopen the Evidence. In addition, the parties stipulated

> that the Court shall consider the transcript of the evidence and exhibits introduced at the first hearing [on Father's petition to modify custody]. Parties further stipulate[d] that in the event the Court grants the [Mother's] Motion to Reopen the Evidence that the Court shall consider the transcript of the evidence and exhibits previously offered in connection with that hearing, both in lieu of any additional evidence.

Appellant's App. p. 13; *see also id.* at 16 ("By agreement of the parties, the Trial Court's consideration is based upon the transcript of the evidence and exhibits submitted in connection with the first hearing on [Father's] Petition, and, if the Trial Court determines that the Motion for Submission of Additional and Supplemental Evidence [should be granted], then upon the transcript of the evidence and exhibits offered at the 'new' hearing. Copies of the transcripts and the exhibits were provided to the Special Judge.").

On November 19, 2007—more than two years after Mother and B.G. moved to Iowa—the trial court issued Findings of Facts, Conclusions of Law, and Ruling on Father's petition to modify custody of B.G. In its order, the trial court first granted Mother's Motion for Submission of Additional and Supplemental Evidence. As for the merits, the trial court's findings provide, in relevant part:

> 2. [B.[2] G.] is a male child born in January, 1995. Both parents believe

---

**1.** The version of Trial Rule 76(C)(3) that was in effect at the time of Father's motion established that a party may seek a change of judge "when a new trial is granted, whether the result of an appeal or not[.]" This rule now authorizes a change of judge "if the trial court or a court on appeal orders a new trial, *or if a court on appeal otherwise remands a*

*case such that a further hearing and receipt of evidence are required to reconsider all or some of the issues heard during the earlier trial[.]* " (Emphasis added).

**2.** We note that the trial court calls B. by his wrong first name throughout most of its order.

that [B.G.'s] best interests would be served if they were to be awarded custody, and each wishes to have custody. There is some minor indirect indication that [B.G.] wishes to reside in Indiana. These indirect wishes are not given any significant weight in consideration of the other statutory factors.

3. [Father] and his current wife have a close, loving and supportive relationship with [B.G.]. [B.G.] also enjoys a good relationship with his paternal grandmother and his step-brother.

4. [Mother] and her extended family have a close, loving and supportive relationship with [B.G.].

5. [B.G.] was well adjusted to his home, school, and community in Indiana, and is adjusting as well as can be expected under all of the circumstances to his current home, school and community.

6. The move to Iowa will, and has, resulted in [Father] not being able to have frequent contact with [B.G.], and that is detrimental to [B.G.]. However, if custody were to be changed, that would result in [Mother], who has had custody of [B.G.] since his birth, not having ... frequent contact with [B.G.]. This would be more detrimental to [B.G.] than limiting his contact with his father.

7. [Father] is able to travel to Iowa more readily than [Mother] is able to travel to Indiana. Thus, [B.G.] will enjoy more contact with both parents if [Mother] retains physical custody.

8. [B.G.'s] move to Iowa has impacted [Father], and, he, in turn, has been unwilling to accept the move. [Father's] reaction has been a significant negative influence on [B.G.'s] adjustment and has created false expectations leading to a further negative impact on [B.G.]. Other than this, neither parent has a significant mental or physical limitation affecting their ability to care for [B.G.]. There is no evidence or implication of family or domestic violence, or that there is, or ever has been, a de facto custodian. The court finds that [Father's] objection to [B.G.'s] move to Iowa is based more on the personal impact to him than on [B.G.'s] best interests.

9. There is no significant difference between the Iowa and Indiana communities, schools, and environments.

10. The effect of the move upon [B.G.] renders the relocation inconsequential. That is it [sic] is in line with the [sic] his best interests.

11. [Mother's] decision to relocate to Iowa was not made for spite, or for otherwise retaliatory motivations. The trial court's prior decision which substantially reduced [Mother's] financial ability to support herself and her child in the manner to which they were otherwise accustomed was in accordance with the Indian[a] Child Support Guidelines. Nonetheless, the real effect was to reduce [Mother's] ability to support her child so drastically that she was forced to explore and act on other options, including relocating to the "free" housing which was available to her in Iowa.

12. Other than the mere fact of the move, there are no substantial change[s] in the circumstances of any of the factors delineated by IC 31–17–2–8.

13. It is in the best interests of [B.G.] for his custody to remain with [Mother].

*Id.* at 18–20 (footnote omitted). In addition, the trial court found that there was a substantial change in Father's parenting time, which resulted in a new calculation and application of the Indiana Child Support Guidelines. The court credited Father with 84 overnights and modified his support to $82.00 per week, both effective September 2, 2005, and granted him par-

enting time with B.G. "at all reasonable times and places as the parties may agree. In the event the parties cannot agree, then [Father] shall have parenting time in accordance with the ... Parenting Time Guidelines, when distance is a factor. The parties are to equally share in the costs of transportation for visitation." *Id.* at 22 (footnote omitted). In addition, the court ordered Father to pay a portion of Mother's attorney fees. Father now appeals.

## Discussion and Decision

Father raises four issues on appeal. First, he contends that the trial court erred in granting Mother's motion for additional evidence. Second, he contends that the trial court erred in denying his petition to modify custody of B.G. Third, he contends that the trial court erred in reducing his parenting time. Last, he contends that the trial court erred in ordering him to pay a portion of Mother's attorney fees.

### I. Propriety of Trial Court Hearing Additional Evidence

■ Father contends that the trial court erred in granting Mother's Motion for Submission of Additional and Supplemental Evidence. Mother responds that the trial court properly considered this evidence based upon this Court's opinion in *Green II*. We agree with Mother.

In *Green II*, we concluded that when this Court remanded the case in *Green I*, the trial court granted a new trial, which meant that Father was entitled to a change of judge pursuant to the version of Trial Rule 76(C)(3) in effect at the time. Implicit in our ruling that Father was entitled to a new judge and a new trial on his petition to modify custody of B.G. was that the trial court could consider the evidence presented at the August 14, 2006, hearing. Accordingly, the trial court did not abuse its discretion in granting Moth-

er's Motion for Submission of Additional and Supplemental Evidence.

### II. Petition to Modify Custody

■ Father contends that the trial court erred in denying his petition to modify custody of B.G. We review custody modifications for an abuse of discretion, "with a 'preference for granting latitude and deference to our trial judges in family law matters.'" *Green I*, 843 N.E.2d at 26 (quoting *Apter v. Ross*, 781 N.E.2d 744, 757 (Ind.Ct.App.2003), *trans. denied*). When reviewing a trial court's decision modifying custody, we may not reweigh the evidence or judge the credibility of the witnesses. *Id.* (citing *Leisure v. Wheeler*, 828 N.E.2d 409, 414 (Ind.Ct.App.2005)). Instead, we consider only the evidence most favorable to the judgment and any reasonable inferences therefrom. *Id.* The burden of demonstrating that an existing child custody arrangement should be modified rests with the party seeking the modification. *Id.* at 27.

In the case before us, the issue of custody modification arose within the context of Mother's desire to relocate with the parties' child, B.G. In situations where a custodial parent wishes to relocate with a child, Indiana law requires that the custodial parent give notice of this intent to the noncustodial parent and to the trial court. Ind.Code §§ 31–17–2–4, –23.

These statutory provisions were repealed on July 1, 2006, and replaced with Indiana Code chapter 31–17–2.2. *See* Pub.L. No. 50–2006, § 7 (eff. July 1, 2006). However, Indiana Code §§ 31–17–2–4 and –23 apply to this case because Mother and Father filed their motions in 2005. *See Browell v. Bagby*, 875 N.E.2d 410, 412–13 (Ind.Ct.App.2007), *reh'g denied, trans. denied.*

Indiana Code § 31–17–2–21 governs the modification of child custody orders, in-

cluding situations in which modification of custody is sought based upon a custodial parent's relocation. *Browell*, 875 N.E.2d at 413 (*citing Bettencourt v. Ford*, 822 N.E.2d 989, 998 (Ind.Ct.App.2005)). This statute reads in relevant part:

The court may not modify a child custody order unless ... the modification is in the best interests of the child; and ... there is a substantial change in one (1) or more of the factors that the court may consider under section 8 of this chapter.... In making its determination, the court shall consider the factors listed under section 8 of this chapter.

Ind.Code § 31–17–2–21. These factors include:

(1) The age and sex of the child.

(2) The wishes of the child's parent or parents.

(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4) The interaction and interrelationship of the child with:

(A) the child's parent or parents;

(B) the child's sibling; and

(C) any other person who may significantly affect the child's best interests.

(5) The child's adjustment to the child's:

(A) home;

(B) school; and

(C) community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

(8) Evidence· that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 8.5(b) of this chapter.

Ind.Code § 31–17–2–8. Further, Indiana Code § 31–17–2–23 (2004) " 'must be construed in conjunction with the child custody modification statute.' " *Browell*, 875 N.E.2d at 413 (quoting *Bettencourt*, 822 N.E.2d at 998). This statutory provision addresses the effect of a parent's relocation on child custody modification determinations. It provides in part:

(a) If an individual who has been awarded custody of a child ... intends to move to a residence:

(1) other than a residence specified in the custody order; and

(2) that is outside Indiana or at least one hundred (100) miles from the individual's county of residence;

the individual must file a notice of the intent to move with the clerk of the court that issued the custody order and send a copy of the notice to the parent who was not awarded custody and who has been granted visitation rights....

(b) Upon request of either party, the court shall set the matter for a hearing for the purposes of reviewing and modifying, if appropriate, the custody, visitation, and support orders. The court shall take into account the following in determining whether to modify the custody, visitation, and support orders:

(1) The distance involved in the proposed change of residence.

(2) The hardship and expense involved for noncustodial parents to exercise visitation rights.

I.C. § 31–17–2–23 (2004). Keeping all of these considerations in mind, we now turn to the matter at hand.

On appeal, Father essentially argues that the evidence does not support the trial court's findings on the above statutory elements. As for subsections (1)–(3) of Indiana Code § 31–17–2–8, which provide that the trial court should consider the age

and sex of the child, the wishes of the child's parents, and the wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen years old, the trial court found:

> 2. [B.G.] is a male child born in January, 1995. Both parents believe that [B.G.'s] best interests would be served if they were to be awarded custody, and each wishes to have custody. There is some minor indirect indication that [B.G.] wishes to reside in Indiana. These indirect wishes are not given any significant weight in consideration of the other statutory factors.

Appellant's App. p. 18. As this three-plus year litigation shows, it is evident that both parents want custody over their son. Because B.G. does not turn fourteen years old until January 2009, the trial court properly did not give his wishes significant consideration. The record supports the court's Finding No. 2.

Subsection (4) of Indiana Code § 31–17–2–8 requires the trial court to consider the interaction and interrelationship of the child with the child's parents, the child's sibling, and any other person who may significantly affect the child's best interests. The trial court made the following findings addressing this factor:

> 3. [Father] and his current wife have a close, loving and supportive relationship with [B.G.]. [B.G.] also enjoys a good relationship with his paternal grandmother and his step-brother.

> 4. [Mother] and her extended family have a close, loving and supportive relationship with [B.G.].

Appellant's App. p. 18. It is undisputed that B.G. has wonderful relationships with both sides of his family. The record supports both of these findings.

We now turn to subsection (5) of Indiana Code § 31–17–2–8, which requires the trial court to consider the child's adjustment to the child's home, school, and community. The trial court made several findings that address B.G.'s adjustment:

> 5. [B.G.] was well adjusted to his home, school, and community in Indiana, and is adjusting as well as can be expected under all of the circumstances to his current home, school and community.

* * * * *

> 9. There is no significant difference between the Iowa and Indiana communities, schools, and environments.

> 10. The effect of the move upon [B.G.] renders the relocation inconsequential. That is it [sic] is in line with the [sic] his best interests.

Appellant's App. p. 18–20. Father concedes that the additional evidence presented at the August 14, 2006, hearing demonstrates that B.G. is doing better in Iowa; however, Father maintains that B.G. has had "significant difficulties" adjusting to Iowa and that he continues to suffer emotionally and psychologically, making the second part of the trial court's Finding No. 5 clearly erroneous and the move to Iowa not in his best interests. Appellant's Br. p. 31.

The evidence shows that B.G., indeed, had an adjustment period when he moved to Iowa with his Mother in 2005 and started the fifth grade; however, as time progressed, B.G. adjusted to his new environment. This was to be expected, as B.G. had lived in Indiana his whole life and enjoyed a very good life there, surrounded by his family, friends, and familiar activities. Nevertheless, shortly after moving to Iowa, B.G. began to excel academically, earning all As and one B, became involved in extracurricular activities, such as baseball and bowling, and made friends and generally fit in well with his peers. According to his fifth grade teacher, B.G. was

"very much the ideal student for a teacher" and was "one of those students that every teacher would want in their class." Appellee's Add. p. 1, 3. According to that same teacher, B.G. "adjusted very well" after just the first few weeks. *Id.* at 5. Although Father took B.G. to a psychologist in Indiana, Dr. Greg Hale, who diagnosed B.G. with an adjustment disorder, Mother took B.G. to a licensed social worker, Raymond Franklin, in Iowa for counseling, who concluded that B.G. quickly adjusted to his new surroundings. In addition, even though Father claimed that the school system in Iowa was vastly inferior to the school system in Indiana and presented his own expert witness in support, that expert ultimately concluded that there was "[v]ery little difference" between the school systems. Appellee's App. p. 34. The trial court was presented with this competing evidence in the record regarding B.G.'s adjustment and made its own findings. The record supports the court's Findings No. 5, 9, and 10.

Subsections (6)–(8) of Indiana Code § 31–17–2–8 require the trial court to consider the mental and physical health of all individuals involved (subsection 6), evidence of a pattern of domestic or family violence by either parent (subsection 7), and evidence that the child has been cared for by a de facto custodian (subsection 8). The trial court made one finding that addresses all of these factors:

> 8. [B.G.'s] move to Iowa has impacted [Father], and, he, in turn, has been unwilling to accept the move. [Father's] reaction has been a significant negative influence on [B.G.'s] adjustment and has created false expectations leading to a further negative impact on [B.G.]. Other than this, neither parent has a significant mental or physical limitation affecting their ability to care for [B.G.]. There is no evidence or implication of family or domestic violence, or that

there is, or ever has been, a de facto custodian. The court finds that [Father's] objection to [B.G.'s] move to Iowa is based more on the personal impact to him than on [B.G.]'s best interests.

Appellant's App. p. 19. As the trial court found, subsections 7 and 8 do not apply here. As for subsection 6, the record supports the trial court's finding that Father has been unwilling to accept the move, which has undoubtedly negatively influenced B.G. For example, on Labor Day 2005, Father was unwilling to facilitate the exchange of B.G. between him and Mother, told Mother that she would have to drag B.G. out of the house, and told B.G. that his mother did not love him and that if she did, she would let him stay in Indiana, and then started yelling in the presence of B.G. about how the schools in Iowa were "lousy." Appellee's App. p. 59.

We now turn our attention to Indiana Code § 31–17–2–23 (2004), which must be construed in conjunction with the child custody modification statute. *Browell,* 875 N.E.2d at 413. Specifically, Indiana Code § 31–17–2–23(2004) requires the trial court to take into consideration the distance involved in the proposed change of residence and the hardship and expense involved for noncustodial parents to exercise visitation rights. Ind.Code § 31–17–2–23(b) (2004). The trial court made two findings that address these factors:

> 6. The move to Iowa will, and has, resulted in [Father] not being able to have frequent contact with [B.G.], and that is detrimental to [B.G.]. However, if custody were to be changed, that would result in [Mother], who has had custody of [B.G.] since his birth, not having ... frequent contact with [B.G.]. This would be more detrimental to [B.G.] than limiting his contact with his father.

7. [Father] is able to travel to Iowa more readily than [Mother] is able to travel to Indiana. Thus, [B.G.] will enjoy more contact with both parents if [Mother] retains physical custody.

Appellant's App. p. 19. Finding No. 6 acknowledges that the move to Iowa has limited Father's frequent contact with B.G. and that this has been detrimental. However, the court found that it would be more detrimental to change custody at this point in B.G.'s life because Mother has had custody of B.G. since his birth. We will not disturb this finding. As for Finding No. 7, the trial court found that Father is able to travel to Iowa more readily than Mother was able to travel to Indiana. This is apparently a reference to the disparity in earnings between the parties, which the record bears out (Father's weekly earnings of $657 versus Mother's weekly earnings of $400). We will likewise not disturb this finding.

At the end of the day, it is apparent that the trial court issued findings of fact on each of the factors listed in Indiana Code § 31–17–2–8 and also considered the factors in Indiana Code § 31–17–2–23(b) (2004). However, after analyzing the section 8 factors, the trial court concluded that modification of custody was not in B.G.'s best interests and that there was not a substantial change in any of those factors. *See* I.C. § 31–17–2–21. Although, as hinted to in *Green I,* if we were the fact-finder we might have reached a different conclusion in 2005 (or even 2006 or 2007) than the two trial courts here did, this is the second trial judge to have denied Father's petition to modify custody of B.G. based upon the same facts. Our deferential standard of review in family law matters requires us to consider the evidence most favorable to the judgment and prohibits us from reweighing the evidence. As such, we conclude that the trial court

here did not abuse its discretion in denying Father's petition to modify custody of B.G.

### III. Decrease in Parenting Time

■ Next, Father contends that the trial court erred by decreasing his parenting time with B.G., an issue that no party even raised at the trial court level. Specifically, Father asserts that the trial court, in its 2006 order, specifically took into account Mother's relocation to Iowa with B.G. when it awarded him extended summer parenting time with B.G. (essentially the whole summer), holiday parenting time with B.G. in even numbered years, spring break parenting time with B.G., as well as parenting time with B.G. "[a]t all other reasonable times and places as the parties shall agree." Appellant's App. p. 28. However, in its 2007 order, the special judge ordered that Father "should have parenting time with [B.G.] at all reasonable times and places as the parties may agree. In the event the parties cannot agree, then [Father] shall have parenting time in accordance with the … Parenting Time Guidelines, when distance is a factor. The parties are to equally share in the costs of transportation for visitation." *Id.* at 22. Father argues that applying the Parenting Time Guidelines means that his summer parenting time with B.G. is reduced from the whole summer to just seven weeks.

We agree with Father that no party has raised the issue of parenting time at any stage in this case, and this Court has not addressed this issue either. On appeal, Mother argues that because the issue of custody modification was before the trial court, it was not an abuse of discretion for the trial court to reduce Father's parenting time to take into account distance. However, Mother's argument ignores the fact that the trial court took into account distance when it awarded Father extended summer visitation with B.G. in the first

place. As such, the trial court abused its discretion by reducing Father's parenting time with B.G. by awarding him parenting time in accordance with the guidelines. We therefore remand this case for the trial court to reinstate Father's parenting time consistent with the trial court's 2006 order.

## IV. Attorney's Fees

 Last, Father contends that the trial court erred in ordering him to pay a portion of Mother's attorney's fees. Specifically, the court ordered:

> **IT IS FURTHER ORDERED,** that the Court's prior order requiring [Father] to "assist [Mother] in the payment of her attorney fees in the sum of $1,200.00 to be paid directly to her attorney, ..." shall remain in full force and effect. In addition, [Father] is to pay an additional portion of [Mother's] attorney fees incurred in conjunction with the further proceedings in this matter in the sum of $400.00.

*Id.* at 23.

As noted in Section II of this opinion, although Indiana Code § 31–17–2–23 (2004), Indiana's relocation notice and hearing statute, was repealed and replaced in 2006, it nevertheless applies to this case because Mother filed her notice of intent to relocate in 2005. Indiana Code § 31–17–2–23(c) (2004) provided that "[e]xcept in cases of *extreme hardship,* the court may not award attorney's fees." (Emphasis added).[3] Mother filed a petition for attorney's fees in 2005 but did not allege extreme hardship. On appeal, Mother argues that Indiana Code § 31–17–2–23 (2004) does not apply but rather Indiana Code § 31–17–7–1, which allows reasonable attorney's fees—without the extreme hardship restriction—for defending a custody proceeding.

Although this appeal indeed involves Father's petition for custody modification, it stems from Mother's notice of intent to relocate. Under Indiana Code § 31–17–2–23(b) (2004), when a party filed a notice of intent to relocate, the court reviewed and modified, if appropriate, custody, visitation, and support. Thus, Father's petition to modify custody is linked to Mother's notice of intent to relocate, and Mother was required to show extreme hardship before she was entitled to attorney's fees. Because Mother failed to show and the trial court did not find extreme hardship, we reverse that portion of the trial court's order awarding Mother attorney's fees.

Affirmed in part, reversed in part, and remanded.

MAY, J., and MATHIAS, J., concur.

---

**3.** Indiana Code 31–17–2–23(c) (2004) was replaced with Indiana Code § 31–17–2.2–1(c), which now provides, "The court may award reasonable attorney's fees for a motion filed under this section in accordance with IC 31–15–10."