**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Nov 26 2014, 9:44 am

_Kevin S. Smith_

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**HEATHER L. PERKINS DENNISON**
Crawfordsville, Indiana

APPELLEE, PRO SE:

**TIFFANY STEVENSON**
Anderson, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| AARON ROGERS, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 54A01-1401-JP-30 |
| | ) | |
| TIFFANY STEVENSON, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE MONTGOMERY CIRCUIT COURT
The Honorable John A. Rader, Special Judge
Cause No. 54C01-1006-JP-170

**November 26, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**PYLE, Judge**

Appellant/Petitioner, Aaron Rogers ("Father"), appeals the trial court's order modifying his parenting time with his minor child, T.R., and awarding sole legal custody of T.R., to T.R.'s mother, Appellee/Respondent, Tiffany Stevenson ("Mother"). Previously, Father had shared joint legal custody of T.R. with Mother, and Mother had held primary physical custody. However, the trial court awarded Mother sole legal custody based on its conclusion that there had been a substantial change in circumstances in Mother's and Father's ability to cooperate and based on its conclusion that granting Mother sole legal custody was in T.R.'s best interests. The trial court also modified Father's parenting time with T.R. to every other weekend.

On appeal, Father argues that the trial court abused its discretion by: admitting evidence he considers hearsay at the custody modification hearing; granting Mother sole legal custody of T.R.; and modifying Father's parenting time. We conclude that the evidence Father challenges was collateral, and, therefore, its admission is not a ground for reversal. We further conclude that the trial court did not abuse its discretion in determining that awarding Mother sole legal custody was in T.R.'s best interests or in modifying Father's parenting time to accommodate T.R.'s preschool schedule.

We affirm.

## ISSUES

1. Whether the trial court abused its discretion in admitting evidence.

2. Whether the trial court abused its discretion in granting Mother sole custody of T.R.

3.  Whether the trial court abused its discretion in modifying Father's parenting time with T.R.

## FACTS

Mother and Father (collectively, "the Parents") are the parents of T.R., born in May of 2010.  On October 13, 2010, the trial court issued an order establishing Father's paternity and granting the Parents joint legal custody of T.R., with Mother having primary physical custody.  The trial court also granted Father visitation pursuant to the Indiana Parenting Time Guidelines ("Parenting Time Guidelines") and ordered Father to obtain health insurance for T.R. through his employer.

By November of 2010, Father was supposed to have two ten-hour visits with T.R. according to the Parenting Time Guidelines, which coincided with his days off work.  However, Mother allowed him overnight parenting time with T.R. for approximately half of every week.  Partially on this basis, Father filed a motion to modify custody and his parenting time on August 26, 2011.  He argued that he already had custody of T.R. for half of the week and therefore should be granted primary physical custody.  He also claimed that Mother's life was unstable because she had "moved several times, had several boyfriends, changed jobs, and left [T.R.] with [Father] for extended periods of time."  (App. 5).

On September 15, 2011, the trial court held a hearing on the motion.  At the hearing, Mother testified that she had only moved three times since November 2010; had held steady employment at the International House of Pancakes until she left her job to move home with her parents; had only had two steady boyfriends in the previous year;

3

had no plans to move from her parents' home; was looking for work; and provided T.R. with adequate care.

In an order entered on September 21, 2011, the trial court denied Father's motion, finding that there was insufficient evidence that there had been a substantial change in circumstances warranting a change in physical custody. The trial court reasoned that "[w]hile [Mother] has moved several times since the entry of the decree, and has had job and relationship changes, there is no proof that these changes have adversely affected the physical or emotional wellbeing of the child." (App. 6). Nevertheless, the trial court increased Father's parenting time, ordering that he should have overnight visits with T.R. on his second and third days off work.[1] The trial court also ordered Mother to get T.R. a new social security card in Father's last name and to give the card to Father so that he could obtain health insurance for T.R.

Subsequently, Mother had multiple changes in her relationships and living situations. Between January of 2012 and April of 2013, she had five boyfriends.[2] She and T.R. moved in with one of those boyfriends in January or February of 2012. They lived there until April, when they moved to Mother's mother's ("Grandmother's") house in Frankton, Indiana. In September, Mother began dating a man named Kent Justice ("Justice"). She and T.R. moved in with Justice in January of 2013, and Mother became pregnant that month.

---

[1] Father's work schedule alternates so that he works for four days and then has four days off work.

[2] Father and Mother dispute this number, so this total reflects the number of people Mother admits to dating.

4

Mother's pregnancy disrupted her work schedule and Father's visitation. Her doctor ordered her to stay on bed rest, and, as a result, she refused to drive to meet Father for parenting time, although she did not object to T.R. being picked up by him. She also missed two and a half months of work. However, she gave birth to a daughter in September 2013, and resumed work by mid-October. As of the time of the hearing, she was working at least eight to sixteen hours per week, mostly on the weekends. Her yearly employee evaluation rated her as meeting expectations in ten areas and exceeding expectations—the highest rating—in thirty-nine areas. She was also recognized as "a good employee." (Petitioner's Ex. 8, 98).

In the middle of October 2013, Mother and Justice ended their relationship. Mother and T.R. stayed with Mother's friend for two days and then moved back to Grandmother's house on October 29, 2013. Thereafter, Mother and T.R. moved in with Mother's stepfather. At the time of the hearing, Mother and T.R. were still living at her stepfather's house.

At the end of the summer of 2013, Mother enrolled T.R. in a Head-Start preschool ("Head Start"). She did not discuss enrolling T.R. in Head Start with Father and would not include Father's information in T.R.'s records. Father, believing that T.R. was smart and did not need preschool, would not take him. He considered Head Start a daycare rather than a school. As a result, Mother started denying Father visitation on the days that T.R. had preschool, as well as the days before T.R. had preschool since she believed

that Father would not return him for school.[3]  Under Head Start's attendance policy, a child may only miss four consecutive days of school.  Children must also attend 85% of the days school is in session every month.  Because Mother denied Father visitation whenever T.R. had preschool, Father missed several weeks of visitation.

In April of 2013, Father filed another motion to modify custody and parenting time.  He argued that Mother had denied him visitation; regularly refused to transport T.R. for visitation; and had failed to provide T.R.'s updated social security card as ordered by the trial court.  Father requested the trial court to modify custody to award him primary physical custody, modify parenting time, and order Mother to show cause for why she should not be held in contempt for her violation of the court's orders.

On December 10, 2013, the trial court held a hearing on Father's motion.  At the hearing, Father testified to the difficulty he had experienced picking up T.R. from Mother for visitation on multiple occasions.  He also stated that he thought T.R. would have "more of a chance" if he had custody because his life was more stable than Mother's. (Tr. 62).  Specifically, he had recently bought a house, had worked for the same employer since he was in high school, and was dating the same woman that he had been dating since T.R. was born.

Father also alleged that Mother did not take suitable care of T.R.  He claimed that on one occasion Mother had not properly administered T.R.'s medication for a breathing condition.  On another occasion, Father took T.R. to the hospital, and Mother met him there and refused to admit T.R.  Father claims that he called the police and that the police

---

[3] Father lived two hours away from Mother.

6

officer also recommended that Mother admit T.R. Mother denied all of these claims. As for the emergency room incident, it later turned out that T.R. had bronchitis.

During the hearing, both parties submitted copies of their past text message conversations. Father also submitted screen shots of Mother's Facebook page in support of a proposition that she led a partying lifestyle. In addition to the text messages, Mother proffered the following exhibits: (1) the Head Start Program's Parent Handbook ("Parent Handbook"); (2) Head Start's Family Conference teaching evaluation of T.R. ("teaching evaluation"); (3) Head Start's three-year-old screening of T.R.; (4) Head Start's Attendance Regulations; and (5) a letter from Kay Lark ("Lark"), the manager of Family Services at Head Start ("Lark's letter") (collectively, "Head Start Exhibits"). Father objected to all of these proffered exhibits on the basis of hearsay. In addition, he claimed that the teaching evaluation was not supported by a business records affidavit and that Lark's letter was equivalent to attempting to testify outside of court. The trial court admitted the exhibits, stating that: "Presumably the Court can consider the hearsay just as there [are] numerous incidents of hearsay in the testimony of [Father's] witnesses as well as the Exhibits." (Tr. 68).

On December 23, 2013, the trial court issued an order awarding Mother sole legal custody of T.R. and granting Father parenting time every other weekend, starting on Thursdays when he does not have to work. It reasoned: "The parties testify regarding the various conflicts involving the prior Joint Custody Order. Given the inability of each of the parties to cooperate sufficiently to make joint custody a viable option, the Court finds that sole custody should be awarded." (App. 16). The trial court also found that

7

"Father [had] failed to provide evidence of probative value that his complaints regarding [Mother] [had] adversely affected [T.R.]." (App. 17). Instead, the trial court concluded that awarding Mother sole custody was in T.R.'s best interests, noting Mother's work evaluations and volunteer efforts at Head Start. The court also commented that Mother had "selected the Head Start Program to provide educational and social benefits for the preschool age child, and this [was] a reasonable choice." (App. 17). Father now appeals. We will provide additional facts as necessary.

## DECISION

Father raises three arguments on appeal. He argues that the trial court abused its discretion by: (1) admitting Mother's Head Start Exhibits because they contained hearsay; (2) awarding Mother sole legal custody of T.R.; and (3) modifying Father's parenting time. We will address each of these arguments in turn.

1. Admission of Evidence

First, Father argues that the trial court abused its discretion in admitting Mother's proffered Head Start Exhibits. He argues that they contained inadmissible hearsay and that the trial court improperly based its award of custody on the contents of the exhibits.

Hearsay is a statement, other than one made by the declarant while testifying at a trial or hearing, offered to prove the truth of the matter asserted. Ind. Evidence Rule 801(c). It is generally inadmissible. Evid. R. 802. However, errors in the admission of evidence, including hearsay, are to be disregarded as harmless unless they affect the substantial rights of a party. *City of Indianapolis v. Taylor*, 707 N.E.2d 1047, 1055 (Ind. Ct. App. 1999), *trans. denied.* Admission of hearsay is not grounds for reversal where it

8

is merely cumulative of other evidence admitted. *Id.* Because the admission and exclusion of evidence falls within the trial court's sound discretion, we will review a challenge to the admission of evidence only for an abuse of discretion. *Reed v. Bethel*, 2 N.E.3d 98, 107 (Ind. Ct. App. 2014). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Id.* We will not reverse the trial court's admission of evidence absent a showing of prejudice. *Id.*

Regardless of whether the trial court erred in admitting the Head Start Exhibits, we will not reverse because the exhibits were cumulative of Mother's testimony. They demonstrated that Head Start had an attendance policy, Head Start was educational in nature, and T.R. had thrived there as a result of his attendance. Mother addressed each of those factors in her testimony. She mentioned that T.R. was not allowed to miss more than four days in a row and that there was an eighty-five percent attendance policy. She also testified that:

> I have refused [Father's] visits numerous times because [T.R.] has school. [Father] has said plenty, plenty of times that . . . [T.R.'s] school is just a daycare. That it is not school. [T.R.] is smart. I mean, he's learned. He has friends at school. Yes, I have moved [], but I'm not going to take him out of his school because that's, he likes it there. He loves it there. His friends are there.

(Tr. 70-71). Finally, she told the court that she put T.R. in Head Start so that he could "learn." (Tr. 79).

As Mother testified to these matters, the Head Start Exhibits were merely cumulative of her testimony and are not a grounds for reversal. Further, we note that in a

9

bench trial, "the harm from any evidentiary error is lessened . . . if not completely annulled." *Roser v. Silvers*, 698 N.E.2d 860, 864 (Ind. Ct. App. 1998). In bench trials, we presume that the court disregarded inadmissible evidence and rendered its decision solely on the basis of relevant and probative evidence. *Id.* Based on these factors, we conclude that the trial court's admission of the Head Start's Exhibits did not affect Father's substantial rights and is not a ground for reversal.

2. Custody

Next, Father challenges the trial court's decision to award Mother sole legal and physical custody of T.R. He argues that the evidence he presented at trial demonstrated that awarding Mother sole legal custody was not in T.R.'s best interests. Specifically, Father claims Mother has had multiple boyfriends in the past year and has lived in multiple locations; she also regularly refused Father visitation; and she failed to provide him with T.R.'s social security card as the trial court had ordered. In addition, Father alleges that Mother improperly administered T.R.'s medication for a breathing condition on one occasion, refused to admit T.R. to the emergency room on another occasion, and changed T.R.'s doctor without consulting him. According to Father, T.R. is always exhausted when he comes to visit.

Based on these factors, Father argues that the trial court should have awarded him sole custody. He contends that, in contrast to Mother, he can provide T.R. with a stable environment and properly care for him. In support of this claim, he reiterates his testimony that he recently bought a house, has had the same job since high school, and is

dating the same person he has been dating since T.R. was born. He also notes that Mother acknowledged that he is a good father.

A child custody determination falls within the sound discretion of the trial court, and we will not disturb its determination on appeal unless it has abused its discretion. *Bowman v. Bowman*, 686 N.E.2d 921, 925 (Ind. Ct. App. 1997). A trial court abuses its discretion if it renders a decision that is clearly against the logic and effect of the facts and circumstances before the court or the reasonable inferences to be drawn therefrom. *White v. White*, 655 N.E.2d 523, 531 (Ind. Ct. App. 1995). In determining whether a trial court has abused its discretion, we will not reweigh the evidence nor reassess witness credibility, and we consider only the evidence that supports the trial court's decision. *Bowman*, 686 N.E.2d at 925.

INDIANA CODE § 31-14-13-6 governs the modification of child custody. It provides that a "court may not modify a child custody order unless: (1) modification is in the best interests of the child; and (2) there is a substantial change in one (1) or more of the factors that the court may consider under [INDIANA CODE § 31-14-13-2]." In turn, INDIANA CODE § 31-14-13-2 provides:

> The court shall determine custody in accordance with the best interests of the child. In determining the child's best interests, there is not a presumption favoring either parent. The court shall consider all relevant factors, including the following:
> (1) The age and sex of the child.
> (2) The wishes of the child's parents.
> (3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
> (4) The interaction and interrelationship of the child with:
> (A) the child's parents;
> (B) the child's siblings; and

11

(C) any other person who may significantly affect the child's best interests.

(5) The child's adjustment to home, school, and community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

(8) Evidence that the child has been cared for by a de facto custodian

. . . .

In support of his argument, Father cites to *Paternity of M.J.M.*, 766 N.E.2d 1203 (Ind. Ct. App. 2002). In *Paternity of M.J.M*, the trial court modified physical and legal custody of M.J.M. and awarded both to M.J.M.'s father on the basis that M.J.M.'s mother had not provided M.J.M. with a stable living environment. M.J.M.'s mother had moved with M.J.M. between four and six times in the previous two years; had become a foster care provider for three additional children; and had "experienced difficulties in her personal relationships that seem[ed] to have affected her ability to care for M.J.M." *Id.* at 1209-10. As a result, the trial court found that it "appear[ed] that [M.J.M.'s mother] placed her own needs before the needs of M.J.M.[,] and [M.J.M.'s mother's] personal issues, coupled with the additional foster children in her home, substantially changed the circumstances triggering a modification of custody." *Id.* at 1210. M.J.M.'s father, on the other hand, was married, had worked the same job for twelve years, and had a stable home for M.J.M. *Id.* Father claims that the circumstances in *Paternity of M.J.M.* are analogous to the circumstances here and that the trial court, likewise, should have modified custody in his favor.

While we agree that some of the facts of *Paternity of M.J.M.* are analogous to the circumstances here, we do not find it persuasive because there is no evidence that Mother

has adversely affected T.R. the way that M.J.M.'s mother had adversely affected M.J.M. Father alleges that Mother failed to take care of T.R. by improperly administering his medicine and by refusing to admit him to the emergency room, but—in addition to the fact that Mother disputes those claims—Father has not shown that T.R. suffered adversely as a result. Likewise, Father has not shown that Mother's various moves or relationship changes have adversely affected T.R. We have previously held that "[a] custodial parent's relocation, alone, will not support a modification of custody; rather, it is the effect of the move upon the child that renders a relocation substantial or inconsequential—i.e., against or in line with the child's best interests . . . ." *Green v. Green*, 843 N.E.2d 23, 27 (Ind. Ct. App. 2006). Here, there is no evidence that Mother's moves and relationship changes have adversely affected T.R., other than Father's self-serving testimony that T.R. is tired when he comes to visit. It is apparent that the trial court did not find this testimony credible since it denied Father's motion, and we may not reassess credibility on appeal. *See Bowman*, 686 N.E.2d at 925.

Instead, it is clear that the trial court properly considered the factors enumerated in INDIANA CODE § 31-14-13-2 for determining a child's best interests. It found that the Parents' interactions warranted sole custody because they could not cooperate sufficiently to share joint custody. Further, consistent with INDIANA CODE § 31-14-13-2(5), the trial court considered T.R.'s adjustment to his school and found that Mother had "selected the Head Start Program to provide educational and social benefits for the preschool age child, and this is a reasonable choice. . . . [T]he evidence provided shows that the Head Start Program the child is enrolled in has an educational curriculum and performance goals."

13

(App. 17). In light of these findings, we conclude that the trial court did not abuse its discretion in awarding Mother sole legal custody.

3. Parenting Time

Finally, Father argues that the trial court abused its discretion in modifying his parenting time from two overnights on his second and third nights off of work to every other weekend. He argues that neither he nor Mother requested a modification of his parenting time and that the modification was, thus, an abuse of discretion. He further notes that the modification does not take into account his work schedule and how it will impact his ability to spend time with T.R. during the parenting time.

When reviewing a trial court's determination of a parenting time issue, we will grant latitude and deference to our trial courts, reversing only when the trial court has abused its discretion. *Gomez v. Gomez*, 887 N.E.2d 977, 983 (Ind. Ct. App. 2008). No abuse of discretion occurs if there is a rational basis supporting the trial court's determination. *Id.* Therefore, "on appeal it is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by [the] appellant before there is a basis for reversal. *Id.* (quoting *Duncan v. Duncan*, 843 N.E.2d 966, 969 (Ind. Ct. App. 2006), *trans. denied*). We will not reweigh the evidence or judge the credibility of witnesses. *Id.* In all parenting time issues, courts are required to give foremost consideration to the best interest of the child. *Id.*

In support of his argument, Father cites to *Green v. Green*, 889 N.E.2d 1243 (Ind. Ct. App. 2008).[4] In *Green*, the trial court denied the father's request to modify custody and then modified his parenting time, despite the fact that neither party had raised the issue of parenting time. *Id.* at 1252. On appeal, we found that the trial court had abused its discretion in modifying the father's parenting time absent either party's request for a modification. *Id.* at 1253. However, the circumstances in *Green* are inapposite.

Here, Father mentioned parenting time in his motion for modification of custody, which was explicitly titled "Motion to Modify Custody, *Parenting Time*, and Child Support and Motion for Rule to Show Cause." (App. 8) (emphasis added). In the text of the motion, Father "respectfully request[ed] the Court [to] modify custody, *parenting time*[,] and child support in this matter." (App. 8) (emphasis added). Parenting time was also a primary topic during the trial court's hearing, because Father emphasized that his parenting time conflicted with T.R.'s Head Start schedule. As a result, we conclude that Father did raise the issue of parenting time.

Further, the trial court had a rational basis for modifying Father's parenting time so that it was not dependent on Father's work schedule. Father has a rotating work schedule where he works for four days and then has four days off. The trial court's 2007 award of parenting time took into account this schedule and allowed Father overnight visitation on his second and third days off of work. Due to the rotating nature of Father's work, however, those days would clearly change every week. Father emphasized repeatedly at the hearing that T.R.'s preschool schedule regularly conflicted with his

---

[4] This is our opinion on appeal after the second remand of *Green v. Green*, 843 N.E.2d 23, 27 (Ind. Ct. App. 2006), which we previously cited.

15

visitation, which was based on his work schedule. Since the trial court found that Mother's desire to have T.R. attend Head Start was a "reasonable choice" to provide him with "educational and social benefits," it was rational for the trial court to modify Father's parenting time so that it would not conflict with Head Start. (App. 17); *see Gomez*, 887 N.E.2d at 983 (stating that no abuse of discretion occurs if there is a rational basis for a trial court's decision). Accordingly, we conclude that the trial court did not abuse its discretion in modifying Father's parenting time.

Affirmed.

NAJAM, J., and BAILEY, J., concur.